Robert P. Kennedy, J.
Plaintiff brought action against defendant for the recovery of $21,670.44 it alleges is due it from defendant for paper products it sold defendant between January 5, 1973 and February 23, 1973. In its answer defendant, while while admitting the purchase and delivery of paper products by plaintiff during that period, denies the agreed price and reasonable value set out in the complaint. In its answer defendant also pleads an affirmative defense and counterclaim for $30,000 for delivery of defective products by plaintiff in violation of its warranties. The summons and complaint were served on defendant on July 3, 1973. Defendant makes no claim that it ever made any written complaint to plaintiff about alleged defects in its product prior to the service of the answer and counterclaim in this action although it maintains that oral complaints were made. Plaintiff now moves for summary judgment. In the affidavit attached to the moving papers of Henry B. Gilson, plaintiff’s credit manager, it is stated that defendant’s vice-president said that the only reason defendant stopped using plaintiff’s product was because defendant’s new machinery wouldn’t accept plaintiff’s cartons, that no claim was made that plaintiff’s product was defective. The affidavit of Michael W. Malarney, one of plaintiff’s attorneys who attended the same meeting, is to the same effect. Also attached to plaintiff’s moving papers are copies of quality control reports relating to problems defendant was experiencing filling its milk cartons all of which indicate that they were caused by its machinery and not because of defective cartons.
Perhaps most damaging to defendant is the letter its vice-president sent to plaintiff on April 25, 1973, approximately two months after the goods sued for were delivered, and in which it is stated that defendant’s problems were caused by its machinery. No claim is made that plaintiff’s product was defective or the cause of its problems in that letter. In fact, the vice-president asks for plaintiff’s consent to pay off the account here sued on over a period of time, stating, finally, u This would help us to liquidate such account on an orderly basis, and would seem reasonable having known the history of the relationship between your client and our company’s.”
Much of the foregoing is admitted in the affidavit submitted by defendant in opposition to this motion, digressing only where it claims to have made oral complaints to plaintiff and defend *765 ant’s claim that the April 25 letter was an attempt to “ conciliate ” plaintiff to stave off its lawsuit which would trigger more lawsuits against defendant.
Defendant’s final grounds for opposing summary judgment is that plaintiff is its only unco-operative creditor and that if it receives judgment “Bankruptcy will follow and all creditors will lose money by a forced sale of assets ’ ’. While I have great sympathy for defendant’s plight, such is certainly no ground for denying judgment if judgment is otherwise indicated.
As stated, there is no dispute as to the fact that plaintiff delivered and defendant received the goods which plaintiff now asks payment for. Defendant’s only claim, both in defense of plaintiff’s action and as its counterclaim, is that the goods were defective. Since defendant did not reject the goods, section 2-602 of the Uniform Commercial Code is not. applicable, but section 2-607 is. This section says, in subdivision (1), that where goods have been accepted “ The buyer must pay at the contract rate for any goods accepted.” Paragraph (a) of subdivision (3) of the same section states that where tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from any remedy. Subdivision (4) places the burden on defendant to establish any breach with respect to goods accepted. Subdivision (2) of section 1-204 says that what constitutes a reasonable time depends on the nature, purpose and circumstances. Here, other than defendant’s claimed oral objections, nothing was done to notify plaintiff of a claimed breach until service of its answer and counterclaim, five months after final delivery and acceptance and after defendant’s attempt to set up a schedule of payment for.the goods. Under the circumstances of this case such a lapse of time is not a “ reasonable time.”
A more difficult question is posed by defendant’s claim that it orally gave notice to plaintiff of alleged defects in the product delivered. Plaintiff maintains that defendant is precluded from asserting oral complaints by operation of the parol evidence rule and cites Aratari v. Chrysler Corp. (35 A D 2d 1077), in support of its. position. Aratari is not authority for such position. The court in that case was dealing with the familiar rule that parol evidence cannot be used to contradict, vary or subtract from the terms of a written agreement. There’s nothing before me on this motion to indicate that there was any written agreement between the parties to this action. As stated previously, section 2-607 (subd. [3]; par. [a] of the Uniform *766 Commercial Code requires a person who accepts tender of goods regarding which he claims defects to ‘ ‘ notify the seller of breach.” Subdivision (26) of section 1-201 of the Uniform Commercial Code says in part that ‘ ‘ A person ‘ notifies ’ or ‘ gives ’ a notice or notification to another by taking such steps as may be reasonably required to inform the other ”.
The official comment to McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, § 2-607, Official Comment, point 4 states that the ‘ ‘ content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched ”. I have found no statute or case which states that the required notice must be in writing. There is evidence to support defendant’s claim of having made complaints about plaintiff’s product, evidence submitted as part 'of plaintiff’s moving papers. The evidence consists of one of the quality control supervisor’s report dated March 1, 1973 which reads, in part, under “ Remarles: Dairy mang. had complained he had a bad shipment of paper.”
In view of the conduct of defendant in its course of dealings with plaintiff, the above does not require a denial of plaintiff’s motion. If the court is convinced that the factual issue raised to defeat the motion is not genuine, is feigned and frivolous, it may, nevertheless, grant the motion (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3212.05c, p. 32-142.36).
The quality control supervisor’s report above referred to as well as the other quality control supervisor’s reports submitted, all of which, except the one referred to above, antedate delivery of the goods which are the subject of this action, show that defendant was having trouble with plaintiff’s product, that in each instance defendant’s machinery and not plaintiff’s product was the cause of the trouble. They also show that with full knowledge of the trouble it was having prior to delivery of the product sued for here, defendant continued to order and use plaintiff’s product and, according to the April 25, 1973 letter from defendant’s vice-president, stopped using plaintiff’s product, not because of any defect in the product, but because defendant changed equipment and it couldn’t use plaintiff’s product with the new equipment. This is the basis of the court’s finding that defendant’s fact issue is not genuine, is feigned and frivolous and not such as to defeat summary judgment. The motion is granted.