**PROMPT ELECTRICAL SUPPLY CO., INC., Plaintiff,**

v.

**ALLEN–BRADLEY COMPANY, Defendant.**

**No. 79 C 745.**

United States District Court, E. D. New York.

June 19, 1980.

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City by Arthur M. Lieberman, Marvin N. Gordon, New York City, for plaintiff.

Hughes Hubbard & Reed, New York City by Robert J. Sisk, Alan H. McLean, John W. Schwartz, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff Prompt Electrical Supply Co., Inc., was an authorized distributor of defendant Allen-Bradley Company's products prior to termination of its Appointed Distributor Agreement, effective—for purposes of this motion—on May 31, 1977. The complaint charges defendant with antitrust violations and breach of contract arising out of its termination. The action is now before the court on defendant's motion for partial summary judgment pursuant to

Rule 56, F.R.Civ.P., on its first through fourth counterclaims which seek $38,252.99 plus interest for electrical equipment allegedly sold and shipped to plaintiff and injunctive relief arising from claimed infringement of the Allen-Bradley trademark, unfair competition and trade practices. For the following reasons, defendant's motion for partial summary judgment is granted in all respects.[1]

■ Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Pursuant to the 1963 amendments, Rule 56(e) provides that when a motion for summary judgment is supported by proper affidavits (or by other materials referred to in Rule 56(c)), "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), and resolve all doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.*

■ "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine

need for trial." Adv. Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). As the Court of Appeals for this circuit recently stated:

"Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. See *Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 187–88 (2d Cir. 1978), *cert. denied*, 439 U.S. [861] [99 S.Ct. 181, 58 L.Ed.2d 169] (1979). The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Rather, he must bring to the district court's attention some affirmative indication that his version of relevant facts is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

With these principles in mind, we turn to consideration of the sufficiency of defendant's showing on this motion and plaintiff's submission in opposition.

■ Defendant's first counterclaim is based on its allegation that during part of 1976 and 1977 it sold and shipped goods to plaintiff for which it has not been paid and that since August 1977 there remains a balance due and owing defendant of $38,-252.99 for such goods after demand for payment. In support of its claim, defendant has submitted the affidavits of George A. Wolz, Allen-Bradley's Manager of Credit and Collections, and John W. Schwartz, Esq., an attorney associated with defendant's counsel. Wolz states that plaintiff has not paid Allen-Bradley for any of the electrical equipment sold and shipped to it by Allen-Bradley from May 12, 1977, through July 15, 1977. He further states that the total purchase price for the electrical equipment for which Prompt has not paid Allen-Bradley is $39,008.76, but that $755.77 was credited, for various reasons, to Prompt's account leaving an unpaid balance of $38,252.99, the amount sought by defend-

---

1. Defendant's second through fourth counterclaims seek damages as well as injunctive re-

lief. Its claim for damages is not before the court on this motion.

ant's first counterclaim. Defendant has supported the Wolz affidavit with copies of Allen-Bradley's accounts receivable statement for Prompt and the individual invoices for all the goods listed on the accounts receivable statement which are the subject of defendant's first counterclaim.

Examination of these documents reveals the evidentiary basis for defendant's claim of entitlement to judgment on the first counterclaim. Plaintiff opposes on the ground that a "large quantity" of the goods it received from Allen-Bradley were "damaged or otherwise defective" and that, since Allen-Bradley would not accept return of the defective products, the products were stored in a warehouse where they were destroyed in a fire that occurred in July 1979.

Although plaintiff asserts that discovery has been limited thus far to interrogatories and production of documents, it does not claim it has been impeded in opposing this motion by lack of opportunity to discover facts relevant to its defense to the first counterclaim. In these circumstances, plaintiff's wholly unsubstantiated claim and bald assertion that the goods were damaged fails to raise a genuine issue as to any material fact. The sole item of evidentiary support for this claim is the verified answers of plaintiff's president, Philip Levinson, to certain interrogatories, which assert, without specification or supporting documentation, that certain units were damaged. Yet, Prompt's discovery from Allen-Bradley, which sought all documents relating to or commenting on Prompt generated after January 1, 1976, and all documents

"reflecting attempts by Prompt to return Allen-Bradley products to Allen-Bradley, and Allen-Bradley's decision not to accept the return of those products,"

has apparently produced no support for plaintiff's contention that defective products were delivered. And this is consistent with Allen-Bradley's discovery from Prompt, which, according to the unrebutted affidavit of John W. Schwartz, lends absolutely no credence to Prompt's claim of receipt of defective goods from Allen-Bradley. It appears, moreover, that Prompt's own accounts payable records show a balance due Allen-Bradley in the amount sought by defendant's first counterclaim. See Schwartz Aff. ¶ 15 and supporting Exh. D. Plaintiff's presentation is insufficient to forestall summary judgment.[2]

■ Plaintiff also argues that it should be absolved of liability since it notified the seller of a breach of warranty on the goods delivered in accordance with a provision of the Uniform Commercial Code allegedly applicable to the action, see U.C.C. § 2–607, Wisc.Stat.Ann. § 402.607,[3] and the defendant chose nonetheless not to accept return of the goods. Plaintiff claims that the oral notice it gave defendant satisfies this provision, citing *International Paper Co. v. Margrove, Inc.*, 75 Misc.2d 763, 348 N.Y.S.2d 916 (Sup.Ct.Monroe Co.1973).

While disputing as a factual matter that notice was orally given (defendant has submitted affidavits of those persons alleged to have received notice which deny notice was ever given), defendant contends that oral notice is insufficient as a matter of law in the circumstances of this case. This contention appears meritorious since defendant's terms and conditions of sale in force during the period in which the counterclaim arose specify that notice of an alleged defect must be promptly given Allen-Bradley *in writing* upon discovery. See Exhs. A & B

---

**2.** We have also considered the implication contained in plaintiff's papers in opposition that certain Allen-Bradley officials or employees might have knowledge which would support Prompt's claim that certain goods which are the subject of the first counterclaim were damaged. While defendant has replied to such a suggestion, it is unnecessary to reach the question since, assuming for these purposes that $2,117.67 of the items were damaged, Prompt failed to notify Allen-Bradley of any defects as

required by its terms and conditions of sale. See discussion *infra.*

**3.** U.C.C. § 2–607, Wisc.Stat.Ann. § 402.-607(3)(a) provides:

"Where a tender has been accepted
(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . .."

attached to Schwartz Reply Affidavit. Plaintiff has admittedly failed to comply with this term. Nor does it argue that it was without knowledge of this term and condition of sale. In these circumstances, this provision is controlling with respect to Prompt's obligation to notify defendant of defects in the goods. See U.C.C. § 1–102(3), (4), Wisc.Stat.Ann. § 401.102(3), (4).

■ Moreover, under U.C.C. § 2–607(4),[4] Wisc.Stat.Ann. § 402.607(4), plaintiff bears the burden of proving that the goods it received were indeed defective or damaged as claimed. We have already concluded that plaintiff has failed to raise a genuine issue as to the condition of the goods. Nor does it appear that further discovery will produce specification or documentation of this claim.

■ Finally, the court also agrees with defendant's contention that the first counterclaim is unrelated to plaintiff's claim for breach of contract. The counterclaim is based upon invoices and the various documents involved in the sales of the goods. The agreement between the parties which was terminated, giving rise to plaintiff's claims, is in no manner implicated in the counterclaim. Thus, summary judgment is appropriate notwithstanding the allegations contained in the complaint. See *Omark Industries, Inc. v. Lubanko Tool Co.*, 266 F.2d 540 (2d Cir. 1959). See also *Metro Corrugated Containers, Inc. v. Owens-Illinois Glass Co.*, 185 F.Supp. 359 (E.D.N.Y. 1960).

■ Turning now to the counterclaims for trademark infringement, unfair competition, and unfair trade practices, we note these claims are based on defendant's unrebutted evidentiary presentation that without permission plaintiff continues to display the Allen-Bradley sign and trademarks at its place of business even though only Allen-Bradley appointed distributors are authorized to display the sign, the use of the sign has become identified only with Allen-Bradley appointed distributors, and plaintiff has been terminated as such a distributor. This conduct is alleged to violate section 32 of the Lanham Act, 15 U.S.C. § 1114,[5] which provides a cause of action to the owner of a registered trademark, as well as sections 368-b and d of the N.Y. General Business Law,[6] which provide caus-

---

4. U.C.C. § 2–607, Wisc.Stat.Ann. § 402.607(4) provides:

"The burden is on the buyer to establish any breach with respect to the goods accepted."

5. Section 32, 15 U.S.C. § 1114, provides in relevant part:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . . ."

6. Section 368-a & b of the General Business Law of the State of New York provide in relevant part:

"Subject to the provisions of section three hundred sixty-eight-e hereof any person who shall

(a) use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this article in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source or origin of such goods or services; or

(b) reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in conjunction with the sale or other distribution in this state of such goods or services; shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in section three hundred sixty-eight-c hereof, except that under subsection (b) hereof the registrant shall not be entitled to recover profits or damages unless the acts

es of action for infringement of trademarks registered with the New York Secretary of State and injury to business reputation or dilution of the distinctive quality of a mark or trade name respectively. Injunctive relief is provided for violations of 15 U.S.C. § 1114 in section 34 of the Lanham Act, 15 U.S.C. § 1116, and in section 368-c of the N.Y. General Business Law for violation of section 368-b, as well as in section 368-d of the New York law.

Plaintiff has failed to present any support for its defense to such claims, relying instead upon its argument that its conduct was proper as a matter of law. It claims it merely uses the Allen-Bradley sign to advertise that it sells Allen-Bradley products. This, however, is beside the point. Defendant does not object to advertising directed at demonstrating to the public that plaintiff sells Allen-Bradley products. It only seeks to enjoin plaintiff from

"using the Allen-Bradley trademarks or any reproduction of colorable imitations thereof in connection with its business, from displaying the Allen-Bradley Appointed Distributor sign or any reproductions or colorable imitations thereof, from holding itself out in any way as an Allen-Bradley Appointed Distributor, and from indicating in any way that Allen-Bradley sells Allen-Bradley products to it for resale."

In the circumstances of this case, defendant has made a clear—and unrebutted—showing that plaintiff's continued unauthorized use of the Allen-Bradley sign and trademark presents a likelihood that the public will be confused or deceived into believing Prompt is an authorized Allen-Bradley distributor. Contrary to plaintiff's bald assertion that the sign does not identify Prompt as an Allen-Bradley Appointed Distributor and "can be more fairly con-

strued as simply and properly advising a potential customer of Prompt that Allen-Bradley products are among those products that are available at the Prompt facility," it is apparent the sign conveys the impression Prompt is an Allen-Bradley authorized dealer. The Allen-Bradley sign is one of three signs affixed to the facade of Prompt's place of business, the most distinctive of which is the "Prompt Electrical Supply" sign. Next to it is a sign with the words "Discount—Lighting Fixtures—Electrical Supplies" and to its left appears the allegedly offending sign. This sign is clearly visible and contains not only the distinctive Allen-Bradley trademark—the letters A–B set in an octagon with the word "quality" inscribed—but also the description "Allen-Bradley Motor Control Headquarters" in bold letters beneath the inscription "Prompt Electrical Supply Co. Inc.—Exit 21—IV 1–9660."

Thus, the Allen-Bradley sign stands together with the Prompt sign on Prompt's facade; the products of no other electrical parts distributor are "advertised" on the facade of Prompt's place of business even though the third sign mentioned above suggests that "electrical supplies" without description of their source of manufacture are available. The clear inference is that Prompt holds itself out as an authorized Allen-Bradley distributor—and no mere seller—through use of the Allen-Bradley sign on the facade of its place of business. Its argument that the sign merely advertises the availability of Allen-Bradley products, without more, is wholly without merit.

In similar circumstances, courts have enjoined the conduct complained of in this action. For example, in *Chrysler Corp. v. Thayer Plymouth Center, Inc.*, 303 F.Supp. 543 (C.D.Cal.1969), a terminated Chrysler

have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive."
And section 368-d of the New York law provides:
"§ 368-d. Injury to business reputation; dilution
Likelihood of injury to business reputation or of dilution of the distinctive quality of a

mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

dealer continued to display prominently Plymouth trademarks at its premises, continued to use the name "Plymouth" in its firm name and conducted itself in a manner that was likely to confuse the public and mislead the public into believing that the dealer was an authorized Plymouth dealer. *Id.* at 547. The court granted Chrysler's motion for summary judgment for permanent injunctive relief, notwithstanding a pending action by the dealer alleging wrongful termination. And in *Ford Motor Co. v. Weibel*, 262 F.Supp. 932 (D.R.I.1967), the court found the unauthorized use of a sign bearing the name "Ford" was likely to cause confusion among the purchasing public and mislead the public into believing they were purchasing used cars from an authorized Ford dealer. *Id.* at 935. See also *Heaton Distributing Co., Inc. v. Union Tank Car Co.*, 387 F.2d 477 (8th Cir. 1967); *Volkswagenwerk, G.m.b.H. v. Frank*, 198 F.Supp. 916 (D.Colo.1961). These authorities amply demonstrate defendant's entitlement to judgment on its second through fourth counterclaims. See *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 441 F.Supp. 1220 (S.D.N.Y.1977), *aff'd*, 580 F.2d 44 (2d Cir. 1978); *Heaton Distributing Co., Inc. v. Union Tank Car Co., supra* ; *Philco Corporation v. Winer*, 189 F.Supp. 827 (S.D.N.Y. 1960).

Accordingly, defendant's motion for partial summary judgment on its counterclaims is granted.

Settle order on five days notice.

SO ORDERED.