*340 OPINION OF THE COURT
Catherine M. DiDomenico, J.
At the trial of this case on March 21, 2005, both parties were represented by legal counsel. Mr. Thomas Basile, president of Precision Mirror & Glass, testified on behalf of plaintiff and submitted one document (plaintiffs exhibit 1). Defendant Bobby Nelms* testified on his own behalf and submitted two documents (defendant’s exhibits A, B).
The court makes the following findings of fact and conclusions of law based on the testimony and evidence adduced at trial.
Precision is a manufacturer of custom-made glass products, such as shower doors, mirrors and glass tabletops. It has a retail store in Staten Island. Precision’s regular business practice is to give immediate attention to customers’ orders and begin production on the same day an order is placed, if possible.
On July 9, 2003, defendant Mr. Bobby Nelms brought Precision a pattern, drawn on paper, he had made of the top of an antique table. Defendant gave the pattern to the Precision employee at the customer service desk and indicated that he wanted to cover his table with three-quarter-inch glass conforming to the pattern. After some discussion, it was decided that the tabletop would be made with three-eighths-inch glass at a cost, including sales tax, of $684.33. Defendant left a $100 deposit, leaving a balance of $584.33 payable upon pickup of the tabletop.
At the time the order was placed, defendant signed a document entitled “Proposal” (plaintiffs exhibit 1; defendant’s exhibit A). Among other terms, this document: (i) specified that the item ordered by defendant was: “1 -36 x 48 3/8 glass . . . Pol [polished] edges ... As per pattern”; (ii) recited the total cost of the order, the deposit paid and the $584.33 balance due; and (iii) further contained, immediately above defendant’s signature, an “Acceptance of Proposal” which provided that “the above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be as specified.” (Plaintiffs exhibit 1; defendant’s exhibit A; hereinafter the contract.)
In addition, the contract contained the following noncancellation clause:
*341 “No Cancellations. ALL ORDERS ARE FINAL SALE. In the event collection of this account or accepted proposal becomes necessary, all discounts will be negated, purchaser will be responsible for any and all costs associated with same, including attorneys fees costs and assessments including interest of 24% per annum . . . Personally Guaranteed. I waive my right to cancellation” (defendant’s exhibit A; plaintiffs exhibit 1).
Notwithstanding this no cancellation policy, Precision’s regular business practice is to allow a customer to cancel an order as long as it occurs prior to the start of production. The rationale for this policy is that once a custom item is made to a customer’s unique specifications, it rarely has any resale value.
On July 11, 2003 at approximately 9:15 in the morning, defendant called Precision stating he wanted to cancel the order because he believed the three-eighths-inch glass ordered would not be suitable for his purposes. Precision responded that the sale could not be cancelled as the glass had already been cut and was awaiting his pickup. Defendant never picked up the tabletop, notwithstanding Precision’s demands that he do so. On or about February 2, 2005, Precision brought this action to recover money damages in the amount owed on the contract ($584.33).
Precision established that it had a valid contract with Mr. Nelms to make the custom glass tabletop ordered in exchange for the price Mr. Nelms agreed to pay. (See UCC 2-204 [1] [“A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract”]; see also Jeppestol v Alfa-Laval, Inc., 293 AD2d 575, 576 [2d Dept 2002] [buyer’s proposal constituted the offer and seller’s purchase order the acceptance resulting in an enforceable contract].)
To justify his refusal to accept delivery, Mr. Nelms does not allege that the custom-made piece was in any way nonconforming to what was agreed to by the parties. Rather, after the order was placed, Mr. Nelms had reservations about the weight of the three-eighths-inch glass he agreed would be used. This change of heart does not excuse Mr. Nelm’s refusal to accept delivery. Accordingly, defendant’s failure to accept delivery of the tabletop is a breach of contract for which he is liable to plaintiff for damages. (See UCC 2-301 [obligation of the seller is to transfer and deliver and obligation of the buyer is to accept and pay in accor *342 dance with contract]; International Paper Co. v Margrove, Inc., 75 Misc 2d 763, 764 [Sup Ct, Monroe County 1973] [summary judgment granted in favor of seller where buyer no longer needed seller’s goods because of change in buyer’s machinery when no claim was made that seller’s product was defective].)
Here, the court finds that the custom glass top was made prior to the time defendant sought to cancel the contract on July 11, 2003. However, even if the glass had not been cut, Precision, when faced with Mr. Nelm’s anticipatory breach, had the right to either accept the repudiation or continue to perform its contractual obligations and sue for breach. (See 22A NY Jur 2d, Contracts § 448, at 135 [“Where one party has repudiated an executory contract, the adverse party thus has an election to treat the contract as broken or not so to treat it”]; see also Greenspan v Amsterdam, 145 AD2d 535, 536 [2d Dept 1988] [plaintiffs election not to waive breach was evidenced by his filing of a mechanic’s lien only days after the breach].)
Pursuant to UCC 2-703, where a buyer wrongfully rejects or revokes acceptance of goods or fails to make payment when due, a seller may, among other available remedies: (i) withhold delivery; (ii) resell and recover damages pursuant to UCC 2-706; or (iii) recover damages for nonacceptance pursuant to UCC 2-708, or, in the appropriate case, recover the price set by the contract pursuant to UCC 2-709. Where, as here, the subject of the contract is a custom-made product allegedly having no resale value, the seller may be entitled to recover the amount owed on the contract. (UCC 2-703, 2-709 [1]; see also Safety Cover Specialist v Marmurek, 2003 NY Slip Op 50846[U] [App Term, 9th & 10th Jud Dists 2003] [where buyer repudiated contract to purchase a custom-made swimming pool cover, seller was entitled to recover the price of the cover].) The burden is on the seller to establish that the subject piece has no resale value, (Creations by Roselynn v Costanza, 189 Misc 2d 600, 601 [App Term, 2d Dept 2001] [seller entitled to contract damages where seller establishes that “resale is impracticable or unavailing under the circumstances”].)
The court finds that it is impracticable for Precision to locate another consumer who possesses a table of the exact dimensions to whom it could sell the custom glass tabletop defendant ordered. Defendant clearly recognized the unique shape and design of this table because he created a pattern to capture its exact characteristics. For these reasons, and as the lack of a resale market for this piece was not rebutted by defendant, this *343 court finds Precision has credibly established it is entitled to recovery of the $584.33 owed on the contract.
Defendant argues that the noncancellation clause in the contract is not enforceable pursuant to Rules of City of New York Department of Consumer Affairs (6 RCNY) § 5-34. This argument is superfluous to, and does not change the result in, this case. In pertinent part, this rule provides: “(a) A contract for consumer goods or services may not be described as noncancellable, unless the seller has performed all its obligations at the time the consumer signs the contract” (emphasis supplied).
Defendant has not identified any cases applying or interpreting this rule, nor has this court found any. However, Rules of City of New York Department of Consumer Affairs (6 RCNY) § 5-01 defines “consumer goods and services” as “goods or services . . . that are primarily for personal, household, or family purposes.” Since no further definition of “goods” is provided in this section, we look to the New York Uniform Commercial Code, the state statute governing commercial transactions.
UCC 2-105 defines “goods” as “all things (including specially manufactured goods) which are movable at the time of identification to the contract . . . Goods which are not both existing and identified are ‘future’ goods.” (UCC 2-105 [1], [2].) Applying this definition, it appears that the tabletop at issue here would be considered “future goods” as it was not movable at the time of identification to the contract nor did it exist at the time the order was taken. Accordingly, since the tabletop was not a “consumer good or service,” section 5-34 would not apply. That custom-made products present unique challenges to contracting parties and may be treated differently from other goods is recognized elsewhere in the law. {See, e.g., General Business Law § 396-u [excluding from the definition of “furniture,” for the purposes of this consumer protection statute, “any article which is in substantial part custom-made or custom finished”].)
Moreover, it is important to note that the noncancellation clause herein is not being used to prevent the buyer from cancel-ling a contract that has been materially breached by the seller. (See e.g. Da Eira v National Furniture Liquidators, 126 Misc 2d 705 [Just Ct, Westchester County 1984] [even if no cancellation clause in furniture sales contract was enforceable, it would not prevent buyer’s cancellation where furniture delivered by seller was defective and otherwise nonconforming].) Clearly, it would be unjust to allow a seller to hide behind its own noncancella *344 tion clause where it is the seller who is responsible for the breach, circumstances not present here.
However, even if section 5-34 did apply, the court’s determination would be the same. There is nothing in the contract which purports to exonerate Mr. Nelms from liability for damages caused by his cancellation. Accordingly, Mr. Nelms would remain liable for any damages caused by his cancellation, regardless of whether the contract contained such a clause. (UCC 2-720 [expressions of cancellation or rescission of a sales contract or the like will not be construed as renunciation or discharge of any claim in damages for an antecedent breach].)
For the reasons set forth above, plaintiff, having shown that the tabletop has no resale value, is entitled to recovery of the remainder of the contract price. Plaintiff is entitled to a judgment in the amount of $584.33 with statutory interest from July 11, 2003 (the date of the breach). {See CPLR 5001 [a].) The request for attorney’s fees made by oral motion at trial is denied as the amount sought was not proven at trial. No time sheets, records or other evidence were introduced to support this claim. Upon payment of the judgment, plaintiff shall turn over possession of the tabletop that is the subject of this action.

 The caption was corrected at trial to accurately reflect defendant’s name, Mr. Bobby Nelms.