SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

v.

RESEARCH AUTOMATION CORPORATION, Konstantinos M. Tserpes, Basil Martos, and Athan Hamos, Defendants,

Konstantinos M. Tserpes and Basil Martos, Defendants-Appellants.

No. 68, Docket 78–6006.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1978.

Decided Oct. 16, 1978.

Frederick B. Wade, Sp. Counsel, Securities and Exchange Commission, Washington, D. C. (David Ferber, Sol. to the Commission, Frederic Townsend, Atty., Securities and Exchange Commission, Washington, D. C., of counsel), for plaintiff-appellee.

Konstantinos M. Tserpes, Basil Martos, defendants-appellants pro se.

Before KAUFMAN, Chief Judge, and MANSFIELD and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In this era of mounting congestion at every level of the federal courts, procedural devices capable of terminating litigation quickly efficiently, and fairly acquire increased significance. One of the most important of these mechanisms is the motion for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure.* Today we take the opportunity to restate the law covering such motions, in the context of an action brought by the Securities and Exchange Commission to enjoin violations of the securities laws. Our aim is primarily to illustrate the effective use of summary judgment in the appropriate case.

Konstantinos Tserpes · is the founder, president, and majority stockholder in Research Automation Corporation (RAC), a New York concern established to design and manufacture industrial machinery. Basil Martos, an accountant, is a vice president. RAC's chief product is an "automatic transfer unit," a device that conveys polished metal parts such as lipstick cases from one segment of an assembly line to the next. RAC has built one version of this machine but has never sold it, nor has the firm derived income from any other source. Its only revenue has been secured from loans made by corporate officers and the sale of RAC common stock to approximately 92 people.

In August 1972, the SEC filed a complaint against RAC, Tserpes, Martos, and Athan Hamos, a director of RAC. The Commission alleged that the defendants offered and sold unregistered securities, in violation of § 5 of the Securities Act of 1933, and made false and misleading statements to investors in connection with those activities, thereby contravening § 17(a) of the 1933 Act, § 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5. Specifically, the complaint charged that the defendants failed to reveal to investors that

RAC had no sales or earnings and that the proceeds from the sale of stock would be applied toward reduction of RAC's indebtedness to its officers instead of development of the transfer unit. The Commission also asserted that RAC and its officers misrepresented the status of a patent application covering the unit and falsely stated that they had a firm order for the machine.

Since the complaint was filed, this case has travelled a long road both in the Southern District of New York and here.[1] During the course of this protracted litigation, the Commission has dropped the registration charges under § 5, and RAC has been permanently enjoined—by default—from violating the securities laws.[2] This appeal concerns Judge Ryan's grant of summary judgment against Tserpes and Martos, the remaining defendants in the case.[3] We affirm.

## II.

### A.

A brief review of the provisions of the summary judgment rule is in order. Rule 56(e) provides that when a motion for summary judgment is supported by the documents listed in Rule 56(c)—depositions, affidavits, answers to interrogatories, and admissions—an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth "concrete particulars," *Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir.

1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972). It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion. *Id.* at 293. *See Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

 In determining whether to grant a motion for summary judgment, of course, the district court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967). Moreover, it must resolve any doubts in favor of the party opposing the motion. *Id.* Thus, summary judgment is likely to be inappropriate when the issues concern intent, *e. g., Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir. 1973), or are otherwise "complex and convoluted," *American Broadcasting, supra*, 388 F.2d at 280.[4] Summary judgment, however, is not necessarily precluded merely because the legal issue is complex. 6 *Moore's Federal Practice* ¶ 56.15, at 56–398 (1976). Indeed, the policy favoring efficient resolution of disputes, which is the cornerstone of the summary judgment procedure, would be completely undermined if unsubstantiated assertions were sufficient to compel a trial. Accordingly, even in suits for injunctive relief, the district courts should not hesitate to grant a plaintiff's request for summary

---

1. Judge Ryan granted a preliminary injunction on November 8, 1972, upon the default of the defendants, who subsequently appealed. We remanded the case for further findings of fact. *SEC v. Research Automation Corp.*, No. 73–1202 (2d Cir. Mar. 9, 1973). On August 7, 1974, Judge Ryan granted the SEC's motion for a default judgment against Tserpes and RAC because of Tserpes's obstructive conduct at his own deposition and those of his co-defendants. We reversed the default judgment against Tserpes on the ground that the Commission had not first sought an order to compel discovery pursuant to Fed.R.Civ.P. 37(a). *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975). In addition, three interlocutory appeals by defendants have been dismissed for lack of jurisdiction.

2. A corporation cannot appear except through counsel, *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426 (2d Cir. 1967) (per curiam), and RAC failed to do so. *See SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975). Although we granted leave for RAC to move "promptly" to vacate the default, *id.* at 589–90, it has not availed itself of this opportunity, and the permanent injunction against it stands.

3. The action against Hamos was discontinued on March 11, 1977, when Judge Ryan approved a stipulation and undertaking filed by Hamos and the SEC.

4. *Cf. Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975) (summary judgment inappropriate where oral testimony could shed light on meaning of contract).

judgment when the defendant has failed to meet the requirements prescribed by Rule 56(e). And this principle is not diluted simply because the Commission is the moving party. *See SEC v. Spectrum, Ltd.*, 54 F.R.D. 70 (S.D.N.Y.1971) (Gurfein, J.); *SEC v. American Beryllium & Oil Corp.*, 303 F.Supp. 912 (S.D.N.Y.1969); *SEC v. American Commodity Exchange, Inc.*, 546 F.2d 1361 (10th Cir. 1976); *SEC v. Geyser Minerals Corp.*, 452 F.2d 876 (10th Cir. 1971); *Latta v. SEC*, 356 F.2d 103 (9th Cir. 1965) (per curiam), *cert. denied*, 384 U.S. 940, 86 S.Ct. 1459, 16 L.Ed.2d 539 (1966). ·

In the case before us, the Commission's motion for summary judgment was supported by depositions, transcripts of the Commission's investigative proceedings,[5] records of the United States Patent Office, and documents drafted by the defendants themselves. After receiving three extensions of time to respond, Tserpes alone submitted an affidavit. He did not, however, file the statement of "material facts as to which it is contended that there exists a genuine issue to be tried" required by Rule 9(g) of the Southern District of New York.[6] Judge Ryan found that the Tserpes affidavit had "totally failed to contradict [the charges] with any specificity," and accordingly determined that there was no need for a trial. He entered summary judgment for the Commission, permanently enjoining Tserpes and Martos from violating the antifraud provisions of the 1933 and 1934 Acts.

### B.

◼ We agree with Judge Ryan's determination that there were no issues of fact

requiring plenary trial. Not only did Tserpes and Martos utterly fail to meet their obligations under Rules 56(e) and 9(g), but there is every indication that they could not have done so.

For example, the Commission attached to its motion papers a letter to RAC investors, signed by Tserpes, stating that RAC possessed a binding contract for five automatic transfer units and that additional orders were expected shortly. To put the lie to that claim, the Commission pointed to Martos's statement in his deposition that no units had ever been sold, and to Tserpes's sworn statement before SEC investigators that he had no intention of entering into binding contracts until facilities for mass production had been established. In his opposition papers, Tserpes merely asserted that the contract exists. He neither produced a copy of the document nor explained his failure to do so. Under these circumstances, Rule 56(e) serves the salutary purpose of permitting us to recognize the reality that a contract never existed.

Similarly, the Commission's moving papers contained a letter Tserpes sent to shareholders in September 1971, with a picture of the firm's automatic transfer unit displayed above the legend "patent applied for." The papers also referred to Martos's admission, in his deposition, that he told offerees a patent for the unit was pending. And to substantiate the contention that these statements were false and misleading, the SEC provided the court below with copies of official records of the United States Patent Office. These records indi-

---

**5.** Sworn testimony taken in an SEC investigation may be used pursuant to Rule 56(c) on a motion for summary judgment. *SEC v. American Commodity Exchange Inc.*, 546 F.2d 1361 (10th Cir. 1976).

**6.** S.D.N.Y.R. 9(g) provides:

Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

This rule, promulgated under the general authority of Fed.R.Civ.P. 83, enables the parties and the court to clear away the fog that so often hangs over the early stages of litigation. By forcing refinement of the issues, it serves a valuable function even if the motion for summary judgment is denied and the case must proceed to trial.

cate that an examiner had rejected RAC's application for a patent on the transfer unit, and this ruling was affirmed by the Board of Appeals of the Patent Office because the machine was "inoperable." The application was abandoned when the time for further review expired in 1968—well before the 1971 shareholder letter.

Appellants denied none of these facts. To be sure, Tserpes presented documents purporting to prove that a patent application had been filed in Canada. Although the exact status of the Canadian application is in dispute, the dispute does not concern a "material fact" in this litigation for purposes of Rule 56. The crucial issue was whether the statement that RAC had applied for a patent on the transfer unit was misleading absent an explanation of the fate of the application. The putative Canadian patent was simply irrelevant to this issue, since any reasonable investor residing in the United States would have believed that the "application" to which the letter referred had been filed in the United States.[7]

### III.

■ Reaching the conclusion that there are not any triable issues of fact, however, is but the first stage in deciding a motion for summary judgment. Rule 56 has two branches, and the court must examine the undisputed facts to determine whether they establish that "the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). *See, e. g., American Broadcasting, supra,* 388 F.2d at 299; 6 *Moore's*

*Federal Practice* ¶ 56.13, at 56–341 (1976). In the case before us, the Commission must show that appellants' misrepresentations concerned facts that were "material" within the meaning of the antifraud provisions of the securities laws [8] and that an injunction was necessary to prevent future violations. We have no difficulty in concluding that the Commission has passed these tests.

■ Determining materiality under the securities laws involves

delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976).

Accordingly, summary judgment in a securities fraud case is proper "[o]nly if the established omissions are 'so obviously important to the investor, that reasonable minds cannot differ on the question of materiality.'" *Id.* (quoting *John Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (4th Cir. 1970)). Although this standard is stringent, the instant case demonstrates that summary judgment in a securities fraud case is by no means foreclosed. Who could not regard as vital the denial of U.S. patent protection for RAC's principal product on the grounds that it was "inoperable"? What reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to RAC's officers? It is beyond cavil that appellants' misleading statements

---

7. The record also establishes that there is no genuine controversy that the appellants failed to disclose that RAC would use the proceeds of the stock sale to pay its debts to its officers, that RAC did not provide offerees and purchasers with detailed written financial statements, or that Tserpes represented to investors that the value of RAC common stock would shortly rise from $3 to $5 per share. Representations that the price of a security would attain a specific value have been held to "bear the hallmark of fraud." *SEC v. Dolnick,* 501 F.2d 1279, 1283 (7th Cir. 1974).

8. Both Fed.R.Civ.P. 56 and the antifraud provisions refer to "material facts," but in different senses of the term. One element of a securities

fraud action is the materiality of the misleading factual statement or omission. The omission or misstatement is material if there is a substantial likelihood that it would be perceived as important by a reasonable investor. *See, e. g., SEC v. Bausch & Lomb Inc.,* 565 F.2d 8, 15 (2d Cir. 1977). *Cf. TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (an omitted fact is material for purposes of the proxy rules "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote"). As the term is used in Rule 56, a fact is material if it could affect the resolution of an issue with respect to any element of a claim or defense.

and omissions concerned facts that were material as a matter of law.

It is equally clear that an injunction was a proper remedy. Appellants repeatedly and willfully made the most blatant misrepresentations to those whose money they sought, and there is obviously a reasonable likelihood that wrongdoing would recur. *See SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). Indeed, appellants continue to maintain that the Commission's charges of wrongdoing are "untrue and totally myth," thereby strengthening the inference that future violations are likely. *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1101 (2d Cir. 1972). The judgment is affirmed.