In re **MEGAN–RACINE ASSOCIATES, INC., Debtor.**

**NIAGARA MOHAWK POWER CORPORATION, Plaintiff,**

v.

**MEGAN RACINE ASSOCIATES, INC. and The Federal Deposit Insurance Corporation, as Receiver for the New Bank of New England, N.A., Defendants.**

Bankruptcy No. 92–00860.
Adv. No. 94–70113.

United States Bankruptcy Court,
N.D. New York.

March 24, 1995.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, Mitchell Katz, of counsel), Syracuse, NY, for Megan-Racine Associates, Inc.

Swidler & Berlin, Chartered (Michael L. Shor, William J. Mertens, of counsel), Washington, DC, and Brian Billinson, Niagara Mohawk Power Corp., Law Dept., Syracuse, NY, for Niagara Mohawk Power Corp.

Bingham, Dana & Gould (Sabin Willett, of counsel), Boston, MA, for F.D.I.C.

House, Golden, Kingsmill & Reiss (Marguerite Kingsmill, of counsel), New Orleans, LA, Bond, Schoeneck & King (James Dati, of counsel), Syracuse, NY, for Hudson Engineering.

Goldberg & Fabiano (Harold Goldberg, of counsel), Syracuse, NY, for Creditors Committee.

Hancock & Estabrook (Stephen Donato, of counsel), Syracuse, NY, for Kraft.

Melvin & Melvin (Louis Levine, of counsel), Syracuse, NY, for Western Gas.

Michael Collins, Office of U.S. Trustee, Utica, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter comes before the Court on motions by Megan Racine Associates, Inc. ("Debtor") and Federal Deposit Insurance Corporation ("FDIC"), as receiver for the New Bank of New England, in the adversary proceeding commenced by Niagara Mohawk Power Corporation ("NIMO") against Debtor and FDIC. On or about February 28, 1995, Debtor filed a motion for partial summary judgment on NIMO's complaint under Federal Rule of Bankruptcy Procedure ("Fed. R.Bankr.P.") 7056(d) which incorporates by reference Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56(d). FDIC and Hudson

Engineering Corporation, as *amicus curiae,* filed memoranda of law in support of Debtor's motion and NIMO filed a memorandum of law in opposition.

On March 13, 1995, Debtor's motion was orally argued on the Court's regular motion term in Binghamton, New York. At oral argument, FDIC acknowledged that its memoranda of law in support of summary judgment asserted arguments not present in Debtor's motion. The Debtor's motion for summary judgment was submitted for decision on March 13, 1995.

Thereafter, FDIC submitted an application for an order for a hearing to be held on shortened notice on FDIC's motion for summary judgment under Fed.R.Bankr.P. 7056. On or about March 14, 1995, the Court granted an order reducing time for a hearing on FDIC's motion for summary judgment on each count of NIMO's complaint and on FDIC's counterclaim.

FDIC submitted a skeletal motion for summary judgment which incorporated by reference FDIC's memorandum of law in support of Debtor's motion. NIMO submitted a memorandum of law in opposition to FDIC's motion and on March 21, 1995, it was orally argued at the Court's regular motion term in Syracuse, New York. FDIC's summary judgment motion was submitted for decision as of that date. The Court consolidates Debtor's and FDIC's motions for summary judgment pursuant to Fed.R.Bankr.P. 7042(a) which incorporates by reference Fed. R.Civ.P. 42(a).

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(B), (C), (H), and (O).

### FACTS

■ Congress enacted the Public Utility Regulatory Policies Act of 1978 ("PURPA") for the purpose of encouraging the development of alternate energy sources. 16 U.S.C. § 2601 *et seq.,* Pursuant to regulations promulgated by the Federal Energy Regulatory Commission ("FERC") and PURPA, public

utilities are required to purchase electric energy from qualifying cogeneration facilities ("QF"). Thus, an artificial market is established whereby public utilities purchase electric energy at a certain rate from QFs pursuant to a power purchase agreement. The standards that a cogeneration facility must satisfy in order to be a QF are left to the discretion of FERC.

Debtor was formed on March 31, 1987, for the purpose of developing and owning a cogeneration facility ("Facility"). The Facility is a gas fired, topping cycle cogeneration facility and was designed with an initial annual capacity of approximately 48.3 megawatts, and an expected annual production of approximately 400,000 megawatt-hours.

On November 21, 1987, Debtor and NIMO entered into an agreement ("PPA") for the sale and purchase of electric power produced by the Facility. On November 22, 1988, Debtor filed with FERC an Application for Commission Certification of Qualifying Status of A Cogeneration Facility pursuant to 18 C.F.R. § 292.207. On January 27, 1989, FERC issued an Order Granting Application for Certification as a Qualifying Status of A Cogeneration Facility.

The original construction financing for the Facility was provided for by the Bank of New England. As collateral security for that financing, Debtor assigned the PPA to the Bank of New England. On or about August 8, 1989, NIMO executed a certain Consent in favor of the Bank of New England. Thereafter, on September 7, 1989, Debtor and the Bank of New England entered into a Credit Agreement and appurtenant documents ("Loan") whereby the Bank of New England ultimately agreed to lend approximately $53,-500,000 to Debtor principally for construction of the Facility. The FDIC succeeded to, and currently holds, all right, title, and interest, formerly held by the Bank of New England in and to the Loan documents, including the PPA and Consent.

On March 17, 1992, Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). The instant adversary proceeding was commenced by NIMO on or about August 1, 1994. Issue was

joined by the service of an Answer on behalf of Debtor on or about August 30, 1994, and by the service of an Answer with Counterclaims on behalf of FDIC on or about September 1, 1994. Debtor filed an amended answer with counterclaims on or about November 1, 1994. NIMO, on or about September 27, 1994 and November 28, 1994, served Replies to FDIC's and Debtor's respective counterclaims.

The parties entered into a Joint Stipulated Order of Consolidation and Pretrial Order ("Pretrial Order") on October 28, 1994. The parties agreed to amend the Pretrial Order on January 6, 1995 ("First Amended Pretrial Order"). The First Amended Pretrial Order incorporated and set forth, among other things, a discovery schedule and that trial shall commence on March 30, 1995. Discovery proceedings are presently pending before this Court.

### ARGUMENTS

NIMO seeks to declare the PPA null and void because the Facility failed to meet QF standards as required by PURPA and FERC regulations. NIMO argues that the FERC certification granted to Debtor was conditional on the Facility meeting certain requirements. Because the Facility did not meet these standards, Debtor and FDIC cannot rely on the FERC certification. NIMO also argues that the PPA, at Paragraph First, allows either party to nullify the contract if the Facility fails to meet QF standards.

NIMO also alleges that Debtor and FDIC fraudulently concealed from FERC and NIMO that the Facility was not maintaining QF status. As such, the fraudulent concealment vitiates the PPA and the Consent agreement.

In its motion for summary judgment, Debtor argues that the Facility's QF status has been and can only be determined by FERC. Further, there is no dispute that FERC has not revoked QF status. Thus, NIMO's argument that there was an event of default under the PPA is unfounded. Even assuming that the Facility lost QF status, a review of the PPA demonstrates that loss of QF is only one of three conditions precedent to the right to exercise the termination reme-

dy. NIMO has not even pleaded that the other two conditions were met.

FDIC largely echoes Debtor's arguments. FDIC also argues that the terms of the Consent agreement prohibit NIMO from declaring the PPA null and void.

### DISCUSSION

Under the appropriate circumstances, summary judgment is a useful tool to expeditiously conclude litigation. See Quinn v. Syracuse Model Neighborhood Corporation, 613 F.2d 438, 455 (2d Cir.1980). However, summary judgment is also a drastic procedural weapon whose prophylactic function serves to cut off a party's right to present its case. See Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir.1975) (citing Donnelly v. Guion, 467 F.2d 290, 291 (2d Cir.1972)). Thus, courts should grant summary judgment motions cautiously so that a litigant is not improperly denied a trial on the issues. See Johnson Foils, Inc. v. Huyck Corporation, 61 F.R.D. 405, 407 (N.D.N.Y.1973).

For purposes of a summary judgment motion, the movant has the burden of showing that there does not exist a genuine issue as to any material fact. See Securities Exchange Commission v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978); Berns v. Civil Service Commission, 417 F.Supp. 17, 20 (S.D.N.Y.1975), aff'd in part and rev'd in part on other grounds, 537 F.2d 714 (2d Cir.1976), cert. denied, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977); Jaroslawicz v. Seedman, 528 F.2d 727, 731 (2d Cir.1975). In addition, the Court must view the evidence in the light most favorable to the opposing party and indulge all inferences in favor of the opponent. Id. Thus, the movants must demonstrate that they are entitled to summary judgment because 'it is quite clear what the truth is.' See Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

■ The disposition of a summary judgment motion is left to the sound discretion of the trial court. *See United States v. Bachman,* 601 F.Supp. 1537, 1540 (E.D.Wis.1985). The trial court may prefer to reserve judgement on the motion or deny the motion until all the evidence is presented and a more complete factual record is formed. *See Id.; Virgil v. Time, Inc.,* 527 F.2d 1122, 1131 n. 15 (9th Cir.1975) ("Denial (as distinguished from grant) of summary judgment involves not only pure questions of law; it involves as well an exercise of discretion upon the question whether decision should be postponed ...") *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976). Therefore, even if the movant establishes the criteria for summary judgment, the motion may be denied as a matter of judicial discretion. *See Toyoshima Corporation of California v. General Footwear, Inc.,* 88 F.R.D. 559, 560 (S.D.N.Y.1980) (citing *Fine v. City of New York,* 71 F.R.D. 374 (S.D.N.Y.1976)); *Securities Exchange Commission v. Research Automation Corp., supra,* 585 F.2d at 33 ("summary judgment is likely to be inappropriate when the issues are ... 'complex and convoluted'" (citations omitted)).

After careful consideration of the arguments, the Court denies, in part, Debtor's and FDIC's respective motions for summary judgment.[1] The motions are granted in so far as they request a stay of the instant proceeding. The Court denies the motion because at this juncture the record does not clearly demonstrate a right to judgment. Further, the Court finds that the complex issues raised in this litigation ought to be resolved on a full plenary trial record. *See Fine v. City of New York, supra,* 71 F.R.D. at 374.

Often the denial of a motion for summary judgment is merely a tentative and inconclusive ruling. *See Armour Research Foundation of Illinois Institute of Technology v. Chicago, Rock Island & Pac. R.R. Co.,* 311 F.2d 493, 494 (7th Cir.1963), *cert. denied,* 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 129. In fact, the Court is not precluded "from later making considered findings and determinations not altogether consistent with [its] prior ruling." *Id.* Thus, the Debtor and FDIC are permitted to present their arguments for reconsideration at the close of NIMO's case or at another appropriate time.

The Court, however, addresses the jurisdictional objections raised by the parties as they are threshold issues in the instant proceeding. Debtor and FDIC argue that FERC has exclusive jurisdiction to determine QF status issues. Debtor offers the additional argument that even if FERC does not have exclusive jurisdiction, this Court should allow FERC to determine all QF issues under the doctrine of primary jurisdiction.

NIMO responds that this Court has jurisdiction to determine QF issues. However, NIMO is amenable to staying the instant adversary proceeding, in order to allow FERC to determine QF issues, if all alleged prospective overpayments under the PPA will be escrowed.[2] *See* NIMO's Memorandum of Law in Opposition to Debtor's Motion for Summary Judgment at 3 and 16–21.

■ In filing its complaint, NIMO essentially sought to impose contractual penalties[3] on Debtor and FDIC because of the facility's alleged failure to maintain QF status. In so far as the matter *sub judice* concerns compliance with contractual promises, rights, and duties, the courts are an appropriate forum.[4] The New York Public Service Commission, in

---

1. Except for the jurisdictional objections raised by the parties, the Court refrains from making findings of fact or conclusions of law as expressly permitted under Fed.R.Bankr.P. 7052(a) which incorporates by reference Fed.R.Civ.P. 52(a). *See Stewert v. United States,* 716 F.2d 755, 765–66 (10th Cir.1982); *Bowles v. John Wanamaker Philadelphia, Inc.,* 5 F.R.D. 53 (D.C.Pa.1945).

2. On or about February 24, 1995, NIMO filed a motion to escrow all future alleged overpayments

that NIMO is making under the PPA. NIMO's motion was argued on March 21, 1995, and submitted for decision on that date.

3. Among the damages sought by NIMO is a declaratory judgment "that the PPA is, or now may be declared, null and void." *See generally* NIMO's Pre–Trial Memo at 7–8.

4. This Court, in particular, has core jurisdiction over the instant adversary proceeding. *See* JUR-

fact, stated that "... regulatory intervention into contractual disputes between utilities and independent electricity suppliers was inappropriate ... Whether the utility may exercise a contractual penalty is *ultimately an issue for the courts to decide.*" *In re Niagara Mohawk Power Corporation,* 1993 WL 560598, * 2–* 3 (N.Y.P.S.C.1993) (emphasis added).

Debtor and FDIC allege that a prerequisite to exercising contractual penalties under the PPA is that certain QF issues must be resolved. The jurisdictional controversy arises because Debtor and FDIC allege that QF issues are within the exclusive jurisdiction of FERC.

 The Court agrees with Debtor and FDIC that a resolution of QF issues is central to the instant litigation. However, the Court declines to become embroiled in the controversy over whether FERC has exclusive jurisdiction with respect to QF issues. The Court, instead, relies on the doctrines of primary jurisdiction and exhaustion of administrative remedies to stay the instant adversary proceeding and allow NIMO to bring certain discrete QF issues to FERC for determination.

The doctrine of primary jurisdiction has been defined by the Supreme Court as a principle where,

"Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Far East Conference, et al. v. United States, et al.,* 342 U.S. 570, 574–575, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952).

 When applying the doctrine of primary jurisdiction, Courts take into consideration such factors as comity, avoidance of conflict, and the expertise of the administrative agency. *See Sunflower Elec. Coop. v.*

ISDICTIONAL STATEMENT, *supra* text at 378–79.

**5.** The *E.I. Du Pont* court correctly points out that the term "referral" is a misnomer. *Id.* at n. 1.

*Kansas Power & Light Co.,* 603 F.2d 791, 795 (10th Cir.1979) (citing *Montana–Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 254, 71 S.Ct. 692, 696–97, 95 L.Ed. 912 (1951)). The court in *Oasis Petroleum Corp. v. Department of Energy,* 718 F.2d 1558 (Temp.Emer.Ct.App.1983) (citations omitted), further clarified the factors to examine when determining whether to apply the doctrine of primary jurisdiction: (1) the question at issue is within the conventional experience of judges, (2) the issue lies in the agency's discretion or is within the agency's particular expertise, (3) whether there exists a danger of inconsistent rulings, and (4) whether a prior application to the agency has been made. *See also Kansas–Nebraska Natural Gas v. Marathon Oil Co.,* 109 F.R.D. 12, 28 (D.Neb.1983).

In applying the first criterion, whether the issue is within the conventional experience of judges, the Court finds that QF determinations are not within its particular expertise. Clearly, a resolution of QF issues would require this Court to engage in substantial and material consideration of non–Code statutes, namely, PURPA and FERC regulations. Such an endeavor by this Court contravenes Congress's perception that "specialized courts should be limited in their control over matters outside of their expertise." *See In re Horizon Air, Inc.,* 156 B.R. 369, 374 n. 5 (N.D.N.Y.1993) (citing *AT & T Co. v. Chateaugay,* 88 B.R. 581, 583 (S.D.N.Y.1988) although the District Court's comments were in the context of mandatory withdrawal of reference under 28 U.S.C. § 157(d), the court's reasoning is equally applicable to the doctrine of primary jurisdiction).

Unfortunately, this Court's relevant factual and legal expertise with the instant adversary proceeding and its relationship with Debtor's bankruptcy case does not aid it in resolving discrete QF issues. Thus, the Court finds that under the first factor to be considered when applying the doctrine of primary jurisdiction, it is appropriate to "refer" specific QF issues to FERC. *See E.I. Du Pont de Nemours & Co. v. Cooper,* 173 B.R. 550, 553–54 (W.D.N.C.1994).[5]

The Court is merely staying its case to enable a party to file an administrative complaint before

The second factor to be considered is whether FERC has particular expertise or discretion in deciding QF issues. The Ninth Circuit stated in *Independent Energy Producers Ass'n, Inc. v. CPUC*, 36 F.3d 848, 854 n. 11 (9th Cir.1994), "The determination of QF status is not a purely ministerial act based on the application of standard formulas ... The regulations provide detailed formulas under which status determinations are made, and the proper interpretation of these formulas can change based on the Commission's changing policy and technical concerns." *But see Sugarloaf Citizens Ass'n v. F.E.R.C.*, 959 F.2d 508, 513 (4th Cir.1992) (in determining whether certification is a "major federal action," the Fourth Circuit states that, "FERC itself has held that certification of a qualifying facility under PURPA is merely a ministerial act ...").

■ The plain language of PURPA supports a finding that QF determinations lie in FERC's discretion and particular expertise. In its definitional section, PURPA states that a qualifying cogeneration facility "means a cogeneration facility which—(i) the *Commission* determines, by rule, meets such requirements ... as the *Commission* may, by rule, prescribe ..." 16 U.S.C. § 796(18)(B)(i) (emphasis added); *see also* 18 C.F.R. § 292.101(b)(1) ("Qualifying facility (i.e. QF) means a cogeneration facility ... which is a qualifying facility under Subpart B of this part of the Commission's regulations."). This language demonstrates that Congress delegated to FERC the responsibility for determining the requirements of QF status. As FERC is responsible for the implementation of the rules for QF status, the agency is presumably most familiar with the complex regulations and shifting policies that are relied upon in determining whether a particular facility has met its standards.

The third criterion, whether there exists the danger of inconsistent rulings, does not appear to be applicable in this case. There is no danger of inconsistent rulings as no other forum is entertaining the issues pending before this Court.

■ The fourth factor requires the Court to determine whether a prior application to the agency has been made and, if so, its effect on the instant litigation. Although, prior application to the FERC has not been made, it is important to note that NIMO is amenable to staying the present litigation *"provided* that Niagara Mohawk's customers are fully protected against continued overpayments to MRA [Debtor]." NIMO's Memo in Response to Debtor's Motion for Summary Judgment at 3–4. That NIMO is amenable to the *principle* that QF issues should be left for FERC weighs heavily in the Court's decision.

■ This Court's decision to abdicate judicial responsibility over QF issues rests largely with the recognition that complex issues involving agency authority are best referred to the agency with expertise in the area. In addition, referring QF issues to FERC aids in the sensible and orderly coordination of work between agencies and courts. However, it is important to note that,

> "What bears continual emphasis is that the Court neither passes off final decision on to another tribunal nor escapes from its ultimate duty to decide. For after the exercise of primary jurisdiction determination by the agency concerned, the case comes back in a suitable way for the Court, as a Court, to act." *Usery v. Tamiami Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976).

■ The Court notes that the doctrine of exhaustion of administrative remedies also supports a finding that FERC should decide pending QF issues. In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938), the Supreme Court stated that the doctrine provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." The Second Circuit noted that the exhaustion doctrine was not limited to cases where the administrative body had ex-

---

the agency. Similarly, the Court is not "certifying" issues to FERC, as that term involves shifting the decision making function to another judi-

cial institution. *See* Paul A. LaBel, *Legal Positivism and Federalism: The Certification Experience,* 19 Ga.L.Rev. 999, 1025 n. 72.

clusive jurisdiction. *See Miss America Organization v. Mattel, Inc.,* 945 F.2d 536, 540–41 (2d Cir.1991) (citing *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969)). The doctrine is also applicable to cases where the federal courts have concurrent jurisdiction with an agency. *Id.* at 541; *but see Sunflower Elec. Co-op. v. Kansas Power & Light Co.,* 603 F.2d 791, 796 (10th Cir.1979) (implying that doctrine of exhaustion is applicable only when agency has exclusive jurisdiction).

The Court finds that referring QF issues to FERC is consistent with the principles governing equitable relief. *See Miss America Organization v. Mattel, Inc., supra,* 945 F.2d at 541. In addition, QF issues involve complex calculations as well as policy consideration that are within the discretion of FERC. *See Independent Energy Producers Ass'n, Inc. v. CPUC, supra,* 36 F.3d at 854 n. 11. Arguably, if this Court decided the QF issues, the notion of judicial error would lurk in the background and leave the parties uncertain as to the wisdom of the Court's decision. Following the Second Circuit's advice, then, the Court finds that the doctrine of exhaustion of administrative remedies is particularly appropriate in the instant case because "the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise." *Miss America Organization v. Mattel, Inc., supra,* 945 F.2d at 540 (citing *McKart v. United States, supra,* 395 U.S. at 185, 194, 89 S.Ct. at 1657, 1663).

Therefore, the Court grants Debtor's and FDIC's respective motions for summary judgment in so far as they requested a stay of the adversary proceeding. The Court, pursuant to Code § 105(a), *sua sponte* modifies the automatic stay to allow NIMO to bring forth the following issues to FERC: (1) Whether the Facility maintained the federal operating and efficiency standards necessary to qualify as a QF in calendar years 1991, 1992, 1993, and 1994?

(2) *Assuming arguendo,* the Facility did not meet the federal operating and efficiency standards necessary to qualify as a QF for any or all of the above calendar years, then is the Facility "decertified" for the calendar year(s) it did not meet QF status?

So as to avoid any confusion, the Court notes that the automatic stay is also modified to the extent Debtor and FDIC seek to participate in the FERC proceeding. The Court assumes that NIMO's petition/application to the FERC will be brought expeditiously because, in contemplation of the instant adversary proceeding, the parties have generally completed discovery and the parties essentially agree as to the data that will be presented to FERC. *See generally* Discussion at March 21, 1995, Pretrial Conference at Syracuse, New York.

Although there is no procedural mechanism whereby the above issues can be "certified" to FERC, the Court requests FERC to resolve these matters as expeditiously as possible. It would be a great injustice for this case to languish any more than necessary. Following FERC's resolution of all QF issues, the parties are directed to return to this Court for a determination of the remaining issues in the instant adversary proceeding.

Accordingly, it is hereby

ORDERED that Debtor's motion pursuant to Fed.R.Bankr.P. 7056(d) for partial summary judgment on NIMO's complaint is denied without prejudice except with respect to the request for a stay of the instant adversary proceeding; it is further

ORDERED that FDIC's motion pursuant to Fed.R.Bankr.P. 7056 for summary judgment on NIMO's complaint and FDIC's counterclaim is denied without prejudice except with respect to the request for a stay of the instant adversary proceeding; it is further

ORDERED that pursuant to Code § 105(a) the Court *sua sponte* modifies the automatic stay imposed by Code § 362(a) as to all parties to this adversary proceeding such that NIMO may bring an application/petition to FERC for the determination of the discrete QF issues identified above; it is further

ORDERED that the stay of the instant adversary proceeding will terminate following FERC's final resolution of the discrete QF issues identified above; and it is further

ORDERED that the parties appear before this Court on June 21, 1995, at 11:00 A.M. at the United States Courthouse in Utica, New York for a conference to review the status of the FERC proceeding.