**Bristout BOURGUIGNON**

v.

**Detective Anthony P. GUINTA, Jr.
Captain Donald A. Brown
Town of Westport**

**No. 3:01CV1151(SRU)(WIG).**

United States District Court,
D. Connecticut.

Feb. 24, 2003.

Bristout Bourguignon, Suffield, CT, Pro se.

Stephen P. Fogerty, Robert Avery Rhodes, Halloran & Sage, Westport, CT, for Defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

UNDERHILL, District Judge.

The plaintiff, Bristout Bourguignon ("Bourguignon"), brings this civil rights action *pro se* pursuant to 28 U.S.C. § 1915. He alleges that he was falsely arrested and imprisoned by the defendants in violation of his Fourth Amendment rights. In addition, he asserts state law claims of defamation and intentional infliction of emotional distress. Pending are the defendants' motion for summary judgment and Bourguignon's motion for partial summary judgment. For the reasons that follow, the defendants' motion is granted and Bourguignon's motion is denied.

### I. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir.2000). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum*, Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117

(1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. *See Securities & Exchange Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit that reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Despite that liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991).

When cross-motions for summary judgment are presented to the court, summary judgment should not be granted "unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely in dispute." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

## II. *Facts* [1]

On July 26, 1999, Richard Pactor contacted the Westport Police Department and stated that someone had broken into and vandalized his residence during the previous evening. Defendant Guinta was assigned to investigate the incident. Mrs. Pactor told the police officers that she had heard a noise in the lower level apartment at approximately 0:30 a.m., on July 26, 1999, but neither she nor her husband checked on the noise.

The intruder broke a glass casement window in the separate living area in the lower level of the home, causing the metal opening mechanism to become bent. Once inside, the intruder made abstract drawings on the walls and carved the following message into one wall, "REVOLUTION ... NO MORE RACIST CRACK HEAD COP ANYMORE." There was blood on two slats in the window blind and a blood spatter on the wall near the window. The homeowner later discovered that the telephone wires had been cut at the junction box located in the furnace room and that the individual circuit breakers of the house had been switched off. The furnace room is accessible from the lower level living area.

Akiko Okamoto ("Okamoto"), the tenant occupying the lower level living area, discovered the break-in and vandalism when

---

1. The facts are taken from the defendants' Local Rule 9(c)1 Statement [doc. # 30] and the documentary evidence attached to that statement, including the arrest warrant affidavit, investigation report, witness statement and transcript of Bourguignon's deposition. Although Bourguignon filed a Local Rule 9(c)2 Statement [doc. # 53] in opposition to the defendants' motion and a Local Rule 9(c)1 Statement [doc. # 42] in support of his motion, neither these statements nor Bourguignon's declarations [docs. ## 37, 41] include any facts supported by admissible evidence that are not contained in the documents relied upon by the court. In particular, the declarations are replete with conclusory statements and assumptions. They do not contain facts within the knowledge of the plaintiff.

she returned home at 5:00 a.m. on July 26, 1999. That afternoon, Westport Police Officer Aricola interviewed Okamoto. She stated that she believed that her boyfriend, Bourguignon, was responsible for the break-in and vandalism. She told Officer Aricola that Bourguignon always talked about a revolution and hated police officers because he thought they were racist. Okamoto said that Bourguignon had come to the home earlier in the day. When she asked Bourguignon why he "did this," he told her that he did it because "she had hurt his feelings."

On July 27, 1999, and again on July 29, 1999, defendant Guinta interviewed Bourguignon at the Westport Police Department about this incident. Bourguignon admitted that he had gone to the home on July 26, 1999. He said that he cut his hand when he was examining the broken window in Okamoto's bedroom and assumed that was the reason there was blood on the blind and wall near the window. He denied any involvement in or knowledge of the incident and claimed that Okamoto lied about the incident.

On July 28, 1999, defendant Guinta again met with Okamoto. She told him that Bourguignon did not enter her bedroom on July 26, 1999. She said that she may have told Bourguignon about the blood on the window blinds.

Defendant Guinta drafted an affidavit to obtain a warrant for Bourguignon's arrest. He included in the affidavit the information he obtained from Okamoto, the Pactors and Bourguignon as well as Bourguignon's criminal history. Defendant Brown witnessed Guinta's signature on the affidavit. He had no other involvement with Bourguignon's arrest.

An arrest warrant was issued by a state judicial officer. Bourguignon was arrested on charges of burglary and criminal mis-

chief. These charges were nolled before trial.

## III. *Discussion*

The defendants raise six arguments in support of their motion for summary judgment: (1) the arrest warrant affidavit contains no material misrepresentations or false statements of the defendants; (2) even if the arrest warrant did contain material misrepresentations or false statements, the undisputed facts demonstrated probable cause for Bourguignon's arrest; (3) Bourguignon's arrest was not based on race; (4) the actions of defendants Brown and Guinta are protected by qualified immunity; (5) the claims against defendant Town of Westport fails as a matter of law; and (6) the court should decline to exercise supplemental jurisdiction over Bourguignon's state law claims. In support of his motion for partial summary judgment on the issue of liability, Bourguignon argues that there were misrepresentations and omissions in the arrest warrant affidavit and the defendants violated his rights under the Fourth and Fourteenth Amendments.

### A. *Defendants' Motion for Summary Judgment*

The court considers the defendants' motion as applied to the various claims raised in the complaint.

### 1. *False Arrest Claim*

The defendants first argue that Bourguignon fails to state a claim for false arrest because the arrest warrant affidavit contained no misrepresentations or omissions and there was probable cause for his arrest.

The Fourth Amendment's protection against unreasonable seizure includes the right to be free from arrests without probable cause. *See Weyant v. Okst*, 101 F.3d

845, 852 (2d Cir.1996). Probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* To establish probable cause for an arrest, the officer need only establish a "probability or a substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Because the existence of probable cause depends on the probability, rather than the certainty, that criminal activity has occurred, the validity of an arrest does not require an ultimate finding of guilt. *See Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The court may determine the existence of probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See Carson v. Lewis,* 35 F.Supp.2d 250, 257 (E.D.N.Y. 1999) (collecting cases).

■ Bourguignon argues that the arrest warrant affidavit contained material misrepresentations and omissions. To prevail on this claim, Bourguignon

must make the same showing that is required at a suppression hearing under *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978): the plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause. *Golino [v. City of New Haven ]* 950 F.2d [864,] 870–71 [ (2d Cir.1991), *cert. de-*

*nied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992) ]; *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667. Unsupported or conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof. *See Franks,* 438 U.S. at 171, 98 S.Ct. 2674.

*Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994). Bourguignon has not included an offer of proof in opposition to the defendants' motion for summary judgment or in support of his own motion.

"[A] police officer may rely upon the statements of victims or witnesses or determine the existence of probable cause for the arrest, *see Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000), regardless of the ultimate accurateness or truthfulness of the statements. *See Bernard v. United States,* 25 F.3d 98, 103 (2d Cir.1994)." *Zandhri v. Dortenzio,* 228 F.Supp.2d 167, 176 (D.Conn.2002) (citations omitted). *See also Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); *Miloslavsky v. AES Eng'g Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992) (providing that "[t]he veracity of citizen complaints who are the victims of the very crime they report to the police is assumed"), *aff'd,* 993 F.2d 1534 (2d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). In addition, police officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Caldarola v. Calabrese,* 298 F.3d 156, 167–68 (2d Cir.2002) (internal quotation marks

and citation omitted); *see also Carson*, 35 F.Supp.2d at 261 (citing cases holding that, once probable cause has been established, the police are not required to try to negate it).

The defendants have provided copies of the arrest warrant affidavit, the police incident report and sworn statement provided by Okamoto. Although Bourguignon contends that the affidavit contains misrepresentations and that the defendants fabricated the statement signed by Okamoto, he has presented no evidence to support his claims. Bourguignon conceded at his deposition that he was not present at any time when Okamoto spoke with police officers and has no affidavits or other admissible evidence to support his belief that the defendants fabricated Okamoto's statement. In addition to Okamoto's statement, the arrest warrant affidavit included Bourguignon's statements denying any knowledge of or involvement in the incident.

Bourguignon also states that Okamoto told him that she lied to the police. Assuming this statement is true, it is entirely plausible that Okamoto indeed gave police the statement provided by the defendants. As indicated above, the defendants were entitled to rely upon Okamoto's statements, even if the statements were later proven false. Again, Bourguignon has provided no evidence to show that the defendants were aware, at the time defendant Guinta prepared the arrest warrant affidavit, that Okamoto's statements may have been false.

The court concludes that a reasonable police officer provided with the sworn statement of Okamoto and the information provided by the Pactors could properly conclude that probable cause existed to charge Bourguignon with burglary and criminal trespass. Thus, Bourguignon fails to meet his burden of demonstrating a genuine issue of material fact regarding the preparation of the arrest warrant affidavit and the existence of probable cause to support his arrest. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995) (holding that no federal civil rights claim for false arrest can exist where there was probable cause for the arrest), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). The defendants' motion for summary judgment is granted with respect to the false arrest claim.

### 2. *False Imprisonment Claim*

■ Bourguignon also alleges that he was falsely imprisoned. "[E]xistence of probable cause for an arrest totally precludes [a] [s]ection 1983 claim for unlawful arrest, false imprisonment or malicious prosecution." *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir.1985). *See also Peterson v. Saraceni*, No. 3:93cv2624 (AHN), 1997 WL 409527 (D.Conn. July 16, 1997) (dismissing section 1983 claims for false arrest and false imprisonment because probable cause existed for plaintiff's arrest). The court has determined that Bourguignon's arrest was supported by probable cause. Thus, his false imprisonment claim must fail. The defendants' motion for summary judgment is granted with respect to any section 1983 claim for false imprisonment.

### 3. *Racial Motivation*

In addition, Bourguignon alleges that he was falsely arrested because of his race. Other jurisdictions have recognized such a claim under 42 U.S.C. § 1981. *See, e.g., Hardin v. Meridien Foods*, No. 98 CIV. 2268(BSJ), 2001 WL 1150344, at *7–8 (S.D.N.Y. Sept. 27, 2001); *Conway v. City of Philadelphia*, No. CIV. A. 96–8112, 1997 WL 129024, at *3 (E.D.Pa. Mar. 20, 1997).

To establish this claim, however, Bourguignon must present some evidence to show that his arrest was racially motivated. " '[N]aked assertion[s] by plaintiff that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory....' " *Hardin,* 2001 WL 1150344, at *8 (quoting *Carson v. Lewis,* 35 F.Supp.2d 250, 269 (E.D.N.Y.1999)). In his complaint, Bourguignon contends that the victim's statements were false and concludes that he was arrested only because of his skin color. He does not identify in his complaint any specific action or statement made by any defendant to support his assumption.

As stated above, the defendants could rely on the believable statements of the victims without conducting further investigation into their truth. The court has determined that the statement of the victim and other information in the arrest warrant application demonstrated probable cause for Bourguignon's arrest. Thus, in the absence of any evidence demonstrating that any defendant was motivated by racial animus, the court concludes that Bourguignon has not met his burden of demonstrating the existence of a genuine issue of material fact regarding this claim. The defendants' motion for summary judgment is granted as to any claim that Bourguignon's arrest was motivated by race.

### 4. *Claims Against the Town of Westport*

■ The defendants argue that the complaint contains no allegations and Bourguignon has presented no evidence to support a claim against the Town of Westport.

In light of the court's determination that Bourguignon fails to meet his burden of demonstrating a genuine issue of material fact regarding his claim of false arrest, there is no basis upon which to find the Town liable. Even if Bourguignon had set forth a proper claim for false arrest, however, his claim against the Town of Westport would fail.

In *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court set forth the test for municipal liability. To establish municipal liability for the allegedly unconstitutional actions of a municipal employee, Bourguignon must "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). Municipal liability cannot be premised on a theory of *respondeat superior. See Monell,* 436 U.S. at 691, 98 S.Ct. 2018.

Here, Bourguignon alleges no facts from which the court could infer the existence of a municipal policy or custom that led to his arrest and provides no such evidence in opposition to the defendants' motion for summary judgment. Thus, he fails to meet his burden in opposing the motion. The defendants' motion for summary judgment is granted with respect to the false arrest claim against the Town of Westport.

### 5. *State Law Claims*

■ Bourguignon includes in his complaint state law claims of defamation and intentional infliction of emotional distress. The defendants urge the court to decline to exercise supplemental jurisdiction over this claim.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 715–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The federal court should exercise supple-

mental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants. The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or when the federal court would be required to interpret state law in the absence of state precedent. *See id.* at 726, 86 S.Ct. 1130. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

Because the court has granted the defendants' motion for summary judgment with respect to all federal claims contained in the complaint, the court declines to exercise supplemental jurisdiction over the state law claims for defamation and intentional infliction of emotional distress, or any other possible state law claims. Thus, Bourguignon's states law claims are dismissed without prejudice.

### B. *Bourguignon's Motion for Summary Judgment*

In his motion, Bourguignon seeks entry of summary judgment with respect to liability on claims of violation of his rights under the Fourth and Fourteenth Amendments as well as state tort claims of false arrest, false imprisonment, intentional infliction of mental or emotional distress and invasion of privacy. He also challenges the conditions of confinement in the "Bridgeport County Jail." In opposition, the defendants argue, *inter alia,* that the complaint contains no Fourteenth Amendment or invasion of privacy claims and that they have no control over conditions of his detention.

To the extent that Bourguignon seeks summary judgment on any of the federal constitutional claims raised in his complaint, his motion is denied. The court has determined that summary judgment should enter in favor of the defendants on those claims. With regard to any federal claim not raised in the complaint, Bourguignon cannot amend his complaint to assert the claim in a memorandum. *See Natale v. Town of Darien,* No. CIV. 3:97CV583 (AHN), 1998 WL 91073, at *4 n. 2 (D.Conn. Feb. 26, 1998) (holding plaintiff may not amend complaint in memorandum of law) (citing *Daury v. Smith,* 842 F.2d 9, 15–16 (1st Cir.1988)); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F.Supp. 976, 987 (S.D.N.Y.1989) (same). Thus, any claims for violation of rights secured under the Fourteenth Amendment or unconstitutional conditions of confinement are not properly before the court.[2] Bourguignon's motion is denied

---

2. Even if these federal claims had been included in the complaint, they would be subject to dismissal. Claims for unlawful seizure and arrest are governed by the Fourth Amendment, which is applicable to the defendants through the Fourteenth Amendment. They do not arise solely under the Fourteenth Amendment. *See Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999). *See also Lennon v. Miller,* 66 F.3d 416, 423 n. 2 (2d

with respect to such claims. Finally, Bourguignon's motion is denied with respect to his state law claims because the court has declined to exercise supplemental jurisdiction over these claims.

## IV. Conclusion

The defendants' motion for summary judgment [**doc. # 28**] is **GRANTED** and Bourguignon's motion for partial summary judgment [**doc. # 40**] is **DENIED**. The Clerk is directed to enter judgment in favor of the defendants on all federal law claims and close this case.

Cir.1995) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Thus, Bourguignon's false arrest claim is not cognizable as arising solely under the Fourteenth Amendment. In addition, the only defendants in this case are the Town of Westport and two members of the Westport Police Department. The defendants have no control over Bourguignon's custody outside of the Town. It is not clear whether the Bridgeport

County Jail referenced in Bourguignon's declaration is a City of Bridgeport or State of Connecticut facility. Regardless, neither would be under the control of the defendants. Thus, Bourguignon's claim regarding the conditions of confinement in the Bridgeport County Jail also is subject to dismissal because the defendants were not involved in or responsible for Bourguignon's confinement there.