**TOTAL CAR FRANCHISING
CORPORATION**

v.

**L & S PAINT WORKS, INC.**

No. 3:97–0817.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 8, 1997.

John W. Lewis, Barbara Jean Moss, Wyatt, Tarrant & Combs, Nashville, TN, Christopher Prine Bussert, J. Michael Wiggins, Kilpatrick Stockton, LLP, Atlanta, GA, for plaintiff.

Michael Wayne Edwards, Hendersonville, TN, for defendant.

### *MEMORANDUM*

JOHN T. NIXON, Chief Judge.

Pending before the Court is Plaintiff Total Car Franchising Corporation's Motion for Preliminary Injunction Pending Arbitration (Doc. No. 4), to which Defendant submitted a Brief in Opposition (Doc. No. 14). Oral argument by the parties was heard on September 5, 1997. For the reasons outlined below, the Court grants the Motion.

### *I. Background*

Plaintiff Total Car Franchising Corporation ("TCF" or "the Plaintiff") is a franchisor of over three hundred (300) "vehicle appearance technology franchises" around the U.S. TCF is in the business of providing painting services for cars, trucks, certain types of water craft, and aircraft, specializing in removal of scratches and camouflage of other paint flaws. The corporation's business is unique for two reasons: its franchisees use a trademarked painting system called "COLORS ON PARADE," and they perform their business out of mobile units, taking their paint restoration services to their customers in order to increase convenience. Defendant

L & S Paint Works ("L & S" or "the Defendant") is a Tennessee corporation operated by James Robert Lunsford in Hendersonville, Tennessee.

In 1994, TCF and L & S entered into a franchise agreement, which granted L & S the right to use the COLORS ON PARADE system in working on cars within the "Designated Marketing Area" of metropolitan Nashville. Under the contract, TCF agreed to provide training, confidential product materials, and on–location technical support to the franchisee, as well as assistance in making contacts with potential customers in the marketing territory. For its part, under Section 5(k) of the contract, L & S agreed to conform with the terms of a Non–Competition and Confidentiality Agreement, which stated, in pertinent part:

> In the event the Franchise Agreement is terminated prior to its expiration date ... then in such event Franchisee covenants, for a period of two (2) years after such termination ... not to engage as an owner, operator, or in any managerial capacity, in any business engaged in the same or similar type of appearance technologies as it relates to automobiles, trucks, certain types of watercraft and aircraft within the metropolitan statistical area in which the Designated Marketing Area is located, other than as an authorized franchisee or employee of another Colors on Parade franchise....
>
> ... In the event of termination ... of this Agreement, Franchisee agrees that it will never use Franchisor's confidential information or trade secrets, in the design, development or operation of any business specializing in appearance technologies as it relates to automobiles, trucks, certain types of watercraft and aircraft. Franchisee agrees that if it engages as an owner, operator or in any managerial capacity in any such business, it will assume the burden of proving that it has not used Colors on Parade's confidential information or trade secrets....
>
> During the term of the Franchise Agreement and for two (2) years after any termination prior to its expiration date ... Franchisee covenants that it will neither directly or indirectly solicit, induce, divert or take away any customer within the statistical marketing area in which the designated marketing area is located who the Franchisee actually served during the term of this Agreement.

The Franchise Agreement also contained a separate post–termination noncompetition clause, under Section 9(b):

> *Post Term Competition.* For a period of two (2) years following the termination of this Agreement neither you nor any of your partner(s) or shareholder(s) shall engage in, assist or have any financial or management interest, directly or indirectly ... in an other mobile or fixed location paint restoration business in the standard metropolitan statistical Area in which the territory is located.

Upon Lunsford's signing of the Franchise Agreement in early December 1994, TCF provided Lunsford and his business partner—through its Area Developer, Auto Magic, Inc.—with a month–long training in confidential COLORS ON PARADE techniques, with COLORS ON PARADE manuals and other materials, and with an initial customer base of three car dealerships in the Nashville area. Auto Magic also provided back–up technical support to Lunsford as he performed jobs for these customers. Lunsford purchased his own van, which was outfitted with COLORS ON PARADE supplies and on which appeared a COLORS ON PARADE sign.

On June 5, 1997, TCF terminated the Franchise Agreement with L & S.[1] Plaintiff

---

1. The reason for the Agreement's termination is a matter of contention between the parties. TCF alleges that in May, 1997, it received notice that Lunsford was accepting payment from customers for paint restoration services, but was not documenting these transactions with invoices and thus was not passing along to the company and to the Area Developer the requisite proceeds of COLORS ON PARADE sales. In response, TCF terminated the Agreement pursuant to Section 8(B)(2), which pertains to maintenance of false business records. Lunsford asserts that he failed to provide invoices only for "cash jobs," or restoration work that was performed for clients other than the car dealerships to which he was referred by Auto Magic. Lunsford claims that the Auto Magic representative who trained him, Donald Campbell, told Lunsford and his partner that such undocumented "cash jobs" were permissible.

now claims that since the termination, Lunsford[2] has continued to provide on–site paint restoration services, although he is now operating under the name of ProTouch Auto Services. Plaintiff alleges that Lunsford is now servicing the same customers he serviced as a COLORS ON PARADE franchisee, using the same van as a "uniquely equipped mobile service center" (Pl.'s Mot. at 6–7), in violation of the Agreement's confidentiality and non–competition provisions. On August 6, 1997, Plaintiff filed this Motion to enjoin Lunsford from continuing such activity, pending arbitration between the parties.

## II. Discussion

Injunctive relief is appropriate pending resolution of the case through arbitration. *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir.1995). In considering whether to grant a preliminary injunction, a court must consider the following factors: (1) the likelihood of the movant's success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest of granting or denying the injunction; and (4) the possibility of substantial harm to others if the injunction is issued. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). Sixth Circuit precedent makes clear that these four elements are not absolute prerequisites, but rather are to be balanced by the Court. *Performance Unlimited*, 52 F.3d at 1381 (*citing In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)). Furthermore, if a party demonstrates substantial likelihood of success on the merits, the three other factors will favor the party as well. *Planned Parenthood Ass'n . v. McWherter*, 716 F.Supp. 1064, 1066 (M.D.Tenn.1989); *cf. Performance Unlimited*, 52 F.3d at 1385–86 (*quoting Merrill Lynch, Pierce, Fenner & Smith v. Grall*, 836 F.Supp. 428, 432 (W.D.Mich. 1993) (citation omitted)). The Court therefore will focus its inquiry upon the first factor.

In order to prevail on this first factor, Plaintiff must show it is likely to prove that Defendant has breached the confidentiality and non–competition provisions of the Agreement. A necessary preliminary inquiry for such a finding is whether these provisions are themselves valid. Though there is no inflexible formula for determining reasonableness of a restrictive covenant, the Tennessee Supreme Court has laid out several factors to be considered, namely: the consideration supporting the agreement; the legitimacy of the business interest sought to be protected; the economic hardship imposed on the employee; and whether such a covenant would be inimical to the public interest. *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 363 (1966).

Defendant does not contest the reasonableness of the confidentiality and non–competition provision incorporated pursuant to Section 5(k) of the Agreement. (Def. Opp. Brf. at 5.) Rather, he claims that Plaintiff will be unable to show that Lunsford's current conduct violates this provision. Defendant argues that he is "simply painting cars in the same manner it did before entering the Franchise Agreement." (Def. Opp. Brf. at 5.) In other words, Lunsford claims that he is not presently using any COLORS ON PARADE technologies in performing paint restoration work, that he returned to the company all product manuals and materials with which he was provided as a franchisee, and that his van no longer bears the COLORS ON PARADE logo. Although Lunsford admitted at oral argument that he had performed work after the Agreement's termination for two of the customers he had previously served while a Franchisee—thereby violating the Agreement[3]—he agreed to refrain from doing so in the future.

This defense, however, does not end the inquiry. The Agreement's post–termination noncompetition provision, Section 9(b) forbids a Franchisee from conducting

---

**2.** Although Lunsford initially had a partner in L & S Paint Works, at all times relevant to this litigation he had assumed sole control of L & S operations.

**3.** The Agreement states, in relevant part, "Franchisee covenants that it will neither directly or

indirectly solicit, induce, divert or take away any customer within the statistical area in which the designated marketing area is located who the Franchisee actually served during the term of this agreement."

*any* restorative paint work in the prescribed territory—not only restorative paint work utilizing COLORS ON PARADE technologies—for two years after termination of the Agreement. Thus, Defendant argues that this provision of the Agreement does not meet the standards of reasonableness outlined above, and therefore should not bind him. Specifically, Defendant argues that two state supreme court decisions, *Hasty v. Rent–A–Driver, Inc.,* 671 S.W.2d 471, 473 (Tenn.1984), and *Selox Inc. v. Ford,* 675 S.W.2d 474, 476 (Tenn.1984), forbid restraint of such "ordinary competition." Where the resulting hardship to the employee far outweighs any damage to the employer's business interests, the *Hasty* and *Selox* courts found, a restrictive covenant may not stand. *See Hasty,* 671 S.W.2d at 474.

Defendant's reliance on *Hasty* and *Selox* is misplaced. While those cases provide useful guidelines for determining the reasonableness of restrictive covenants, they dealt with the permissible restrictions placed upon a mere employee by his or her former employer. Lunsford, in contrast, is a franchisee who owns and operates a business that is in direct competition with his former franchisor. Indeed, in *Hasty* the court distinguished the truck driver in that case, who had a long history of similar employment and had simply changed jobs, from one who was "privy to ... trade or business secrets or confidential information" and who had "received ... training" from the former employer. 671 S.W.2d at 473. The court also distinguished the plaintiff in that case from one who had repeated, close contact with the former employer's customers and became associated with the employer's business, and who could attempt to influence former customers to use his new employer's services rather than those of his former employer. *Id.*

In this case, Lunsford was a car salesman until four days before he entered into the Franchise Agreement with the Plaintiff. Lunsford attempted to establish that his continued work as a paint restorer amounted to a change in "employers" by testifying at oral argument that prior to his job as a car salesman, he had worked for eight years as an automotive paint restorer. He also presented the affidavit of a former employer to

that effect. However, the fact remains that Lunsford only re–entered the business of car restoration upon agreeing to represent COLORS ON PARADE. Furthermore, he was the *proprietor* of L & S Paint Works, Inc. and one of just two recipients of COLORS ON PARADE's trining and confidential information. He served car dealerships in the Nashville area for more than two years as a COLORS ON PARADE technician. Now, he is the sole proprietor of ProTouch Auto Services, Inc., which provides precisely the same services that L & S did. Consequently, the record is not "bereft of any facts of the type ordinarily used to attempt to justify a non–competition clause." *Id.* Moreover, based upon established law in the area of injunctions and successor entities, Lunsford's Pro Touch Auto Services, Inc. is bound by the restrictive covenant entered into by L & S. *See National Medical Care, Inc., v. Gardiner,* No. 85–154–II, 1986 WL 3157, at *2 (Tenn.App. Mar. 12, 1986) (injunction imposed upon director of dialysis center in competition with former employer enjoined not only director, but also his "servants or agents and those acting in collusion or combination" with him) (*citing Rigas v. Livingston,* 178 N.Y. 20, 70 N.E. 107 (1904)). The Court notes that the territorial scope of the non–competition clause is entirely reasonable, given that Lunsford is only restricted from operating within "the standard metropolitan statistical Area in which the [franchisee's] territory is located." Franchise Agreement Section 9(b). Defendant is still free to operate his mobile business anywhere outside Nashville. The duration of the covenant is also acceptable, in light of the fact that covenants lasting for two to five years have all been found to be of reasonable duration. *See, e.g., Greene County Tire & Supply, Inc. v. Spurlin,* 207 Tenn. 189, 338 S.W.2d 597, 600–01 (1960) (five–year, 100–mile restriction upheld); *William B. Tanner Co. v. Taylor,* 530 S.W.2d 517, 522 (Tenn.App.1974) (two–year, no competition in the United States, Canada, or Mexico restriction enforced).

Having concluded that the Agreement's post–termination noncompetition provision is valid, the Court need not address the factual question of whether Defendant has breached the separate Non–Competition and Confiden-

tiality Agreement by continuing to perform work using COLORS ON PARADE's unique techniques. The Court notes, however, that the Agreement provides that the Franchisee "assumes the burden of proving that it has not used Colors on Parade's information or trade secrets." The Defendant here has not done so. Although Lunsford testified at oral argument that he had returned all COLORS ON PARADE materials to TCF headquarters, he produced no evidence of that fact. While Lunsford's van now bears no logo, he produced no evidence that the van is no longer specifically outfitted on the inside with COLORS ON PARADE materials. His bare assertion that he could not be utilizing COLORS ON PARADE's trademarked techniques in his current business for the simple fact that he never learned anything from his training is not convincing, especially in light of the fact that he worked for COLORS ON PARADE for more than two years.

Because the Court concludes that Plaintiff is likely to succeed in proving that breach of the non–competition and confidentiality provisions has occurred, it is not necessary to consider the other factors in the preliminary injunction test. *See Planned Parenthood Ass'n v. McWherter,* 716 F.Supp. 1064, 1066 (M.D.Tenn.1989); *cf. Performance Unlimited,* 52 F.3d at 1385–86 (*quoting Merrill Lynch, Pierce, Fenner & Smith,* 836 F.Supp. 428, 432 (W.D.Mich.1993) (citation omitted)).

While the Court is sympathetic to Lunsford's difficulty at having to restrict the conduct of his small business, the rule of law simply requires that he comply with the terms of the Agreement that provided him with substantial benefits for more than two years.

### III. Conclusion

For the reasons stated above, the Court hereby GRANTS Plaintiff's Motion for Preliminary Injunction Pending Arbitration.

An order consistent with the findings herein is filed contemporaneously.

### ORDER

Pending before the Court is Plaintiff Total Car Franchising Corporation's Motion for Preliminary Injunction Pending Arbitration (Doc. No. 4), to which Defendant submitted a

Brief in Opposition (Doc. No. 14). For the reasons set out in the contemporaneously filed Memorandum, the Court GRANTS Plaintiff's Motion for Preliminary Injunction Pending Arbitration. Therefore, Defendant and its officers, partners, agents, employees, and attorneys, and all persons in active concert or participation with Defendant, are precluded from continuing to conduct an on–site, mobile plant restoration business, from continuing to solicit and divert Plaintiffs customers, and from disclosing or using Plaintiffs trade secrets or confidential information in violation of the provisions of the Franchise Agreement pending final determination in arbitration pursuant to the Franchise Agreement.

It is so ORDERED.