**MERRY MAIDS LIMITED PARTNERSHIP**

v.

**Bernadette M. KAMARA and Almamie S. Bangura.**

**No. Civ. Y–98–3564.**

United States District Court, D. Maryland.

Dec. 10, 1998.

Allan P. Hillman, Baltimore, MD, for plaintiff.

Norris C. Ramsey, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

Plaintiff, Merry Maids Limited Partnership [Merry Maids], brings this suit for a preliminary injunction to enjoin Defendants [Kamara and Bangura] from continuing their operations as Merry Maids franchisees. The Defendants are former franchisees of Merry Maids, a house keeping service. This suit arises from Plaintiff's allegations that the Defendants have refused to honor their post-termination obligations to Merry Maids as set forth in their Franchise Agreement.

Merry Maids alleges that it terminated Defendants' franchise because they persisted in servicing customers in the Washington, D.C. area, which was not within their designated market and purportedly infringed on other franchisees' territory. On July 20, 1998, after Defendants reassured Merry Maids they would honor the agreement, Plaintiff's investigator allegedly observed Defendants' crew cleaning in Washington, D.C., in violation of the Agreement. Plaintiff also claimed that Defendants were delinquent in reporting and payment of service fees and for products. Accordingly, Defendants' Franchise Agreement was terminated effective July 29, 1998.

Plaintiff now alleges that Defendants continue to operate as Merry Maids franchisees in violation of the Franchise Post–Termination Agreement and in violation of its trademark under the Lanham Act. 15 U.S.C. § 1114(a).

Plaintiff seeks relief in the form of a preliminary injunction pursuant to Fed. R.Civ.P. 65 preventing further infringement, and compelling Defendants to comply with all post-termination (including noncompete) obligations set forth in the Franchise Agreement. Plaintiff has specifically requested that Defendants pay all outstanding service fees and charges; cease operating as Merry Maids; cease the use of all Merry Maids' trademarks and materials; assign all telephone numbers to Merry Maids; return all equipment, materials, confidential information and promotional aids; and not compete with Merry Maids for one year within 75 miles of the outer boundary of Defendants' former market.

Defendants continue to hold themselves out as Merry Maids, in violation of the Post–Termination Agreement, but argue that if the injunction is granted, they will be greatly harmed by the loss of their livelihood. Implicit in their argument is a challenge to the reasonableness of the noncompete clause.

■ The Fourth Circuit, in evaluating preliminary injunction claims, follows the balance-of-hardship test set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). The four factors to consider are:

1. the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;

2. the likelihood of harm to the defendant if the requested relief is granted;

3. the likelihood that the plaintiff will succeed on the merits; and

4. the public interest.

*See Federal Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495, 499 (4th Cir.1981).

### I. Irreparable Harm to the Plaintiff

Plaintiff alleges that if the injunction is not granted, its numerous franchisees will be irreparably harmed. The Defendants admit they continue to operate under the Merry Maids name. The Court agrees that the use of the Merry Maids trademark infringes on Plaintiff's ability to control the use of its trademarks, trade names, and the services they provide using those marks. "Defendants' unauthorized use of plaintiff's trademarks gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is a substantial likelihood of confusion of the purchasing public, there may be no meaningful monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff." *Long John Silver's, Inc v. Washington Franchise, Inc.,* No. 80–540–A, 1980 WL 30249, 1980 U.S.Dist. LEXIS 16635, at *12 (E.D.Va. June 24, 1980). Such infringement is difficult to quantify and thus lends itself to injunctive relief, including enforcement of the noncompete clause.

### II. Harm to the Defendants

Plaintiff concedes there is no question that Defendants will be burdened by the post-termination and noncompete restrictions contained in the Franchise Agreement, but argues that they are restrictions Defendants freely accepted in exchange for the benefit they received at the time they signed the Franchise Agreement and throughout the franchise relationship.

The Defendants will be harmed by an injunction and will suffer a financial loss. Nonetheless, the harm to the Defendants does not outweigh the harm to Merry Maids' business interests. Nonetheless, this Court further considers the harm to the Defendants in determining the reasonableness of the noncompete clause.

### III. Success on the Merits

■ To prevail on a trademark infringement claim, the trademark registrant must show that:

1. its mark was used in commerce by the defendant without the registrant's consent and

2. the unauthorized use was likely to cause confusion, or to cause mistake or to deceive. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir.1983) (citing 15 U.S.C. § 1114(1)(a)).

■ There is a high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademarks. Consumers will associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise would therefore be attributed to the franchisor. In this case, any performance by the Defendants, deficient or otherwise, will reflect on the Merry Maids name as a whole. "Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement." *Id.* at 1492–93 (citing *United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134 (3d Cir.1981); *Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665 (5th Cir.1975); *Prompt Electrical Supply Co., Inc. v. Allen–Bradley Co.,* 492 F.Supp. 344, 349 (E.D.N.Y.1980); *National Board of YWCA v. YWCA of Charleston, S.C.,* 335 F.Supp. 615, 628–29 (D.S.C.1971)). Accordingly, this Court finds a likelihood of success on the merits.

■ Plaintiff asserts its noncompete clause is reasonable and necessary to protect

its legitimate business interests. Pursuant to the Franchise Agreement, Tennessee law governs the contract. "Though there is no inflexible formula for determining reasonableness of a restrictive covenant, the Tennessee Supreme Court has laid out several factors to be considered, namely: the consideration supporting the agreement; the legitimacy of the business interest sought to be protected; the economic hardship imposed on the employee; and whether such a covenant would be inimical to the public interest." *Total Car Franchising Corp. v. L & S Paint Works, Inc.*, 981 F.Supp. 1079, 1081 (M.D.Tenn.1997) (citing *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 363 (1966)).

In *Total Car*, the Defendants were assigned a franchise market of the Nashville metropolitan area. The franchise business was paint restoration for cars and other vehicles. The contract provided that upon termination of the franchise, Defendants could not work in the same field within the metropolitan Nashville area for two years following termination. Accordingly, Defendants argued that was an unreasonable restriction. *Id.*

The court disagreed, ruling that a territorial restriction limited to the Nashville metropolitan areas for two years was reasonable. The court determined that defendant was still free to operate his business outside of the Nashville area. The time was also found reasonable, citing cases that found restrictions lasting for two to five years reasonable. *Id.* at 1082 (citations omitted). "Where the resulting hardship to the employee far outweighs any damage to the employer's business interests, the *Hasty* and *Selox* courts found, a restrictive covenant may not stand." *Id.* (citing *Hasty v. Rent–A–Driver, Inc.* 671 S.W.2d 471, 473 (Tenn.1984)). Those cases, however, dealt with mere employees, whereas in *Total Car* and here, the actual franchisees are involved. Although this Court recognizes the financial hardship Defendants will face, it finds that it does not outweigh the harm to Merry Maids' business interests.

This Court finds that a one year, 75–mile noncompete provision will likely be found

reasonable. Hence, there is a likelihood of success on the merits.

## IV. Public Interest

Preventing infringement and enforcing legitimate noncompete obligations serves the public interest in preventing consumer confusion. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir.1986). "A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. When such party, as defendants here, loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public." *Id.* (citing *Burger King Corp. v. Mason*, 710 F.2d at 1493; *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134 (3d Cir.1981); *Professional Golfers Ass'n v. Bankers Life & Casualty Co.*, 514 F.2d 665 (5th Cir.1975); McCarthy, Trademarks and Unfair Competition § 257 (2d ed.1984)).

## V. Conclusion

In summary, the Court finds, after weighing the relevant factors, that a preliminary injunction should be issued. Accordingly, Defendants are ordered to cease operating as Merry Maids and to comply with all post-termination (including noncompete) obligations set forth in the Franchise Agreement. Based on the foregoing analysis, the Plaintiff's Motion for Preliminary Injunction will be granted.