JTH TAX, INC. d/b/a Liberty Tax, Plaintiff,

v.

Ronald LEE, Defendant.

No. 2:06cv486.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 21, 2007.

Vanessa Mercurio Szajnoga, Liberty Tax Service, Virginia Beach, VA, for Plaintiff.

Ronald Lee, Rock Island, IL, pro se.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on plaintiff's motion for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment is **GRANT-** ED on the issue of liability and **DENIED** as to an amount of damages. However, after an evidentiary hearing, the court **AWARDS** damages in the amount of $133,957.56 to plaintiff. In addition, the court **GRANTS** plaintiff's motion for a permanent injunction. Finally, the stay on defendant's counterclaim is lifted and his counterclaim is **DISMISSED** without prejudice, pending arbitration.

### I. Factual and Procedural History

For purposes of this motion, the following facts have been admitted.[1] Plaintiff JTH Tax, Inc. ("JTH") is a corporation which specializes in franchising tax preparation businesses throughout the United States. In July 2002, defendant Ronald Lee ("Lee") purchased the rights to three Iowa territories, known as IA011, IA012, and IA013, from JTH. At that time, JTH and Lee entered into three Franchise Agreements ("the Agreements"), whereby JTH agreed to allow Lee to use its name and registered trademarks, and Lee agreed to pay certain royalty and advertising fees in exchange. In August 2002, Lee purchased a fourth Iowa territory, IA007, and signed another franchise agreement. In July 2005, Lee purchased a fifth territory in Illinois, known as ILL 103, and signed a fifth agreement. The terms of all five agreements are consistent except for the description of the specific territory.

On June 16, 2006, JTH sent Lee a Notice to Cure, informing him that he was in violation of the Agreements because he owed JTH money which was more than thirty days past due. At that time, Lee owed JTH $70,934.07 in past due royalty and advertising fees. Lee did not pay any of the money that was due. As a result, on August 10, 2006, JTH terminated Lee's

---

**1.** Rule 56(B) of the Local Rules requires that a motion for summary judgment include a list of undisputed facts. The plaintiff has provided such a list. The court is to assume that any facts alleged in the motion are admitted unless contested. The defendant has failed to contest any of the facts alleged with anything other than conclusory denials; pursuant to Rule 56(B), the court will therefore assume such facts to be true.

franchise rights under the Agreements. At the time the Agreements were terminated, Lee owed JTH $72,056.74.

When he signed the Agreements, Lee agreed to perform certain duties in the event that the Agreements were terminated, including: ceasing to associate himself with JTH Tax, transferring all telephone numbers, returning all customer files, returning the JTH Operations Manual and adhering to non-compete and non-solicitation covenants which were part of the Agreements. Lee has refused to abide by his post-termination obligations. Despite signing the non-compete covenant, Lee and his wife have opened a new tax preparation business called U.S. Tax Service ("U.S.Tax"). The offices of U.S. Tax are within the territory covered by the non-compete covenant of the Agreements; in fact, all U.S. Tax offices are located in Lee's former JTH offices. In addition, Lee has admitted to retaining JTH's customer lists and files in violation of the Agreements. Lee also sent out solicitation letters to former JTH customers on behalf of U.S. Tax.

On August 29, 2006, JTH brought suit in this court alleging breach of contract and trademark infringement. On February 14, 2007, Lee filed an answer. On March 12, 2007, Lee filed a counterclaim to which JTH responded. JTH then filed, on March 20, 2007, a motion to stay the counterclaim and to compel arbitration pursuant to the terms of the Agreements. On June 19, 2007, this court adopted the Magistrate's Report and Recommendation, and granted JTH's motion to stay the counterclaim and to compel arbitration. On July 27, 2007, JTH filed a motion for summary judgment that is now before the court,[2] and Lee responded on August 13, 2007. JTH filed a reply on August 20, 2007. This motion is now ripe for review.

## II. Summary Judgment

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, or other evidence to show that there is in fact a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548. Conclusory statements, without specific evidentiary support, are insufficient to oppose summary judgment. *Causey v. Balog,* 162 F.3d 795, 802 (4th Cir.1998).

### A. Breach of Contract–Liability

■ A plaintiff asserting breach of contract[3] under Virginia law must prove: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's

---

2. Pursuant to Local Rule 7(K), JTH also provided Lee, who is proceeding pro se, with notice upon filing the summary judgment, whereby he was informed that the motion filed by JTH could be dispositive of his case and that in his response he must "identify all facts stated by the moving party with which the *pro se* party disagrees and must set forth the *pro se* party's version of the facts by offering affidavits ... or by filing sworn statements." Lee has provided the court with only general statements that he disputes the facts as alleged by JTH, and has provided only one sworn statement that the court finds does not raise any issue of material fact.

3. Although JTH originally filed a claim for both trademark infringement and breach of contract, JTH's Motion for Summary Judgment focuses on Lee's breach of the Agree-

violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004).

▮ In this case, JTH has clearly shown that Lee had a legally enforceable obligation. Lee signed five separate franchise Agreements with JTH, one for each of the territories in which he operated a JTH franchise. (Compl. Ex. 1; Decl. June Montalbano, Ex. 1–5 (Mar. 20, 2007).) By signing these agreements, Lee received the right to operate JTH Tax Service franchises and to use JTH's proprietary trademarks and operating methods. (Compl. Ex. 1 ¶ 1.) In return, Lee promised to pay certain advertising and royalty fees, to comply with the terms of the Agreements, and to abide by certain post-termination obligations in the event that the Agreements were terminated. (*Id.* ¶¶ 1, 4(d), 4(e), 5, 9.) Lee does not dispute that he signed the Agreements with JTH.

▮ JTH has also shown that Lee breached his obligations with JTH. Pursuant to the terms of the Agreements, JTH had the right to terminate the Agreements, after providing a notice to cure, if Lee owed money that was more than thirty days past due. (Compl. Ex. 1 ¶ 8(c)(ii)). JTH sent Lee a notice to cure on June 16, 2006, informing him that he owed money which was more than thirty days past due. When Lee failed to pay, JTH properly terminated the Agreements on August 10, 2006.

Pursuant to the Agreements, Lee then had certain post-termination obligations to JTH, including: to remove all JTH signs from premises (id.¶ 9(a)); to stop identification as a JTH franchisee, never hold out as a former JTH franchisee, cease use of any JTH marks or any marks which are likely to be confused with the JTH marks (*id.* ¶ 9(b)); to stop using all items bearing the JTH marks (*id.* ¶ 9(c)); to pay all amounts owed (*id.* ¶ 9(d)); to transfer all telephone numbers, listings, and advertisements used in connection with the franchise (*id.* ¶ 9(e)); to deliver all copies of customer lists (*id.* ¶ 9(f)); to deliver all customer tax returns, files, and records (*id.* ¶ 9(g)); to deliver the copy of the Operations Manual (*id.* ¶ 9(h)); and to adhere to the post-termination covenant not to compete (*id.* ¶ 9(j)). By signing the Agreements, Lee agreed to abide by the post-termination non-compete and non-solicitation covenants. The non-compete covenant provides, in part, that for two years following the termination of the Agreements, Lee will not, either directly or indirectly, "be employed by, work with, be engaged in, be interested in or advise, invest or contribute money to, lend money to or guarantee the debts or obligations of, any person or entity engaged in tax return preparation, electronic filing, or Bank Products within the Territory or within twenty-five miles of the boundaries of the Territory." (Decl. June Montalbano, Ex. 4 ¶ 10(b)(Mar. 20, 2007).) [4] Lee also agreed

---

ments. JTH states in its motion that it is "waiving monetary damages for this claim for the sake of its Motion for Summary Judgment" for the trademark infringement claim. (Pl.'s Mem. Supp. Mot. Summ. J. 20 note 1.) The Agreements require Lee, upon termination of the franchise, to "cease . . . use of any of the Marks or any marks which are likely to be confused with the Marks." (Compl. Ex. 1 ¶ 9b.) As such, the court will address Lee's use of JTH's marks under the

breach of contract claim and finds the trademark infringement claim to be moot. *See Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir.2002) (a claim is moot "when the claimant receives the relief he or she sought to obtain through the claim.").

4. It appears that in the first three agreements Lee signed, there was an attached Iowa addendum which slightly modified the covenant not to compete. In the Iowa addendum, Lee agreed not to "directly or indirectly, prepare

that for a period of two years following the termination of his Agreements he would not "directly or indirectly, ·solicit the patronage of any person or entity served by any of [his] prior [JTH] offices in the last twelve months." (*Id.* at ¶ 10(d)).

■ JTH has provided voluminous evidence of Lee's breach. In violation of the covenant not to compete, Lee and his wife have opened a new tax preparation business, U.S. Tax, in Davenport, Iowa.[5] The three U.S. Tax offices are in the same location as three of Lee's former JTH offices and continue to use the same phone numbers. Moreover, Lee has used the client files that he retained after his termination to solicit business for U.S. Tax from former JTH customers. U.S. Tax sent out a letter to former JTH clients inviting them to come to U.S. Tax to have their taxes prepared, and advising them that "all records have been retained." [6] (Pl.'s Mem. Supp. Mot. Summ. J., Decl. Amy Andrews, Ex. 2 (July 27, 2007).) Lee failed to stop using all JTH marks. JTH has a valid trademark in its Statute of Liberty logo. Lee continues to use Statute of Liberty posters and cut-outs to promote U.S. Tax. Lee also has promoted U.S. Tax by having a man dressed in an Uncle Sam costume solicit customers by standing outside and waving them into the office. This marketing technique is used by JTH and was originally divulged to Lee in the JTH Operations Manual. Lee has failed to pay the money that he owes to JTH or to return the Operations Manual. Lee again offers only general denials of his actions and has failed to provide any relevant evidence to the court that creates an issue of material fact.

## B. Breach of Contract–Damages

JTH has also shown that it has suffered damages due to Lee's breach of the Agreements and asks for summary judgment as to the amount of damages that it is owed. However, JTH did not provide sufficient information for the court to determine the amount of damages as a matter of law,

---

or electronically file income tax returns ... within the Territory or within twenty-five miles of the boundaries of the Territory." (Decl. June Montalbano, Ex. 1, Iowa Addendum ¶ 10(b)(Mar. 20, 2007).) Regardless, because the court finds that he is, in the very least, indirectly participating in the operation of U.S. Tax, *see infra* note 5, he has violated the covenant not to compete.

5. U.S. Tax is registered to Terri Lee, Lee's wife. However, Lee has not disputed JTH's allegation that he is involved in the operation of U.S. Tax. JTH has provided evidence that Lee has been involved in the operation of U.S. Tax by: commissioning a website for the business, referring to himself as the "manager" of the business, contracting with a tax preparation service, ordering office supplies, and paying bills for U.S. Tax. As noted by JTH, Lee's covenant not to compete includes a covenant not to participate in a tax preparation business, either *directly or indirectly.* (Compl. Ex. 1 ¶ 10(b).) Lee has clearly been involved in the operation of U.S. Tax Service. In addition, he admits he assigned the office leases to his wife and gave her the furniture in the offices and the client files from JTH. He has therefore, at the very least, indirectly participated in a business which he knew was competing with JTH tax, in violation of his covenant not to compete. *See Rash v. Hilb, Rogal & Hamilton Co. of Richmond,* 467 S.E.2d 791, 794 (Va.1996) (holding that a husband who "acted as a participant who, at the very least, indirectly engaged in a business that competed against" his former employer had violated his covenant not to compete).

6. The letters state, in part, "We have not moved!!! Tax season is here and we are looking forward to serving you again this year. Our name is now U.S. Tax Service. Everything will remain the same, the locations, friendly people and excellent service ... For your convenience, each office has information from your 2005 return to start your 2006 return...." (Pl.'s Mem. Supp. Mot. Summ. J., Decl. Amy Andrews, Ex. 2 (July 27, 2007).)

without a hearing. *See, e.g., Pine State Creamery Co. v. Land–O–Sun Dairies, Inc.,* No. 5:96–cv–170, 1998 WL 34304526, at *2 (E.D.N.C. Aug.25, 1998) ("Summary judgment is appropriate if the Court may determine [the plaintiff's] damages as a matter of law.").

The court conducted an evidentiary hearing on damages on September 10, 2007. Based on the credible testimony of Scott Black, JTH's Head Report Developer of Technology, and Rory Walters, JTH's Controller, and the exhibits entered into evidence, see Exs. 1–5, 7, 9–11, the court awards damages in the amount of $133,957.56. This amount is composed of two measures of damages: past due royalty and advertising fees, and lost profits.

■ In an action for breach of contract, the party injured by the breach is generally entitled to the sum that would put that party in the same position as if the contract had been performed. *See Bryant v. Peckinpaugh,* 241 Va. 172, 400 S.E.2d 201, 205 (1991); *Perry v. Scruggs,* 17 Fed.Appx. 81, 86–87 (4th Cir.2001) (unpublished). At the time of his termination, Lee owed JTH $70,619.68 in royalty and advertising fees under the terms of the Agreements.[7] JTH is entitled to recover this amount based on the terms of the Agreements, in order to put it in the same position as if the contract had been performed.

JTH is also entitled to damages for Lee's breach of the post-termination obligations contained in the Agreements. Lee's post-termination obligations include the obligation to abide by the non-compete and non-solicitation covenants. Lee has failed to abide by his obligations because he has been operating U.S. Tax in one of his former JTH franchised territories, IA007. Moreover, JTH itself has opened a new franchise office in this territory, IA007. The new JTH office is located less than one mile from Lee's U.S. Tax office; therefore, it can be inferred that Lee's U.S. Tax office is in direct competition with JTH's new office, in violation of Lee's non-compete agreement.

■ The proper measure of damages in Virginia for breach of a covenant not to compete is the lost profits caused by the breach.[8] *Western Insulation, LP v. Moore,* No.06–2028, 2007 WL 2122068 (4th Cir. July 25, 2007)(applying Virginia law and finding the proper measure of damages for breach of a covenant not to compete to be lost profits that can be proven with a reasonable degree of certainty); *Saks Fifth Avenue, Inc. v. James, Ltd.,* 272 Va. 177, 630 S.E.2d 304, 311 (2006) (noting that for breach of a covenant not to compete, " 'the measure of damages is the diminution in value of the business by reason of the wrongful act, measured by the loss of the usual profits from the business.' ") (internal citations omitted). JTH has provided evidence that its new franchise office collected $63,337.88 less in net fees during the 2007 tax season than Lee's

---

7. Initially, JTH claimed that as of August 10, 2006, Lee owed $72,056.74. However, at the hearing held on September 10, 2007, Rory Walters, JTH's Controller, testified that some errors had been found in JTH's billing of Lee, and that the amount Lee owed under the Agreements was actually $70,619.68.

8. JTH's Franchise Agreements typically contain a Virginia choice-of-law provision. In this case, that provision was voided by an Illinois Addendum that was attached to Lee's Agreements. (Compl. Ex. 1, Illinois Addendum ¶ 2.) However, no other governing law was chosen in its place, and the parties have not argued that any law other than Virginia law applies to the issues at bar. Because this is a diversity matter, the court will apply the law of the forum state, which is Virginia. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. .1188 (1938) (holding that a federal court sitting in diversity applies the law of the forum state); *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir.1994) (same).

office collected in 2006, when it was operating as an authorized JTH franchise. (Decl. Scott Black (July 27, 2007).) If Lee had abided by his non-compete covenant, JTH's new office would not have been competing with U.S. Tax in the IA007 territory. The amount lost by JTH in the IA007 territory during the 2007 tax season, therefore, represents JTH's lost profits, thereby resulting in damages for breach of contract of $63,337.88.[9] Accordingly, the court awards damages in the amount of $133.957.56, which represents $63,337.88 for breach of contract and $70,619.68 in royalty and advertising fees.

### III. Permanent Injunction

JTH has asked for a permanent injunction against Lee requiring him to cease using any JTH marks or any similar marks, to transfer certain telephone numbers to JTH, to deliver all copies of customer lists to JTH, to deliver the JTH Operations Manual and to comply with the terms of his non-compete and non-solicit covenants through August 10, 2008, which is the end date of his non-compete obligations under the Agreements. To determine whether a permanent injunction is appropriate, the court will evaluate four factors: 1) plaintiff's success on the merits, 2) the likelihood of irreparable injury to the plaintiff, 3) the likelihood of substantial harm to defendant, and 4) the public interest. *Blackwelder Furniture Co. v. Seilig,* 550 F.2d 189, 193 (4th Cir.1977).

JTH has succeeded on the merits. The court has found that summary judgment is appropriate on the merits as a matter of law. JTH has also established the likelihood of harm if an injunction is not granted. Lee continues to operate a tax preparation business despite signing non-compete and non-solicitation agreements. JTH correctly argues that Lee's continuing breach of the non-compete covenant and his continued solicitation of former JTH customers constitutes irreparable injury. "[S]uch a · continued breach presents Plaintiff with the high likelihood of permanent loss of former and potential customers." *JTH Tax, Inc. v. Donofrio,* No. 2:06cv47, 2006 WL 2796841, at *5 (E.D.Va. Sept.26, 2006); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 552 (4th Cir.1994) (holding that the possibility of loss of goodwill to a business's reputation satisfies the irreparable injury prong.)

Although the permanent injunction will restrain Lee from working in a tax preparation business within the specified territory until August 2008, the court would be doing nothing more than enforcing Lee's contractual obligations. Lee is free to operate any other type of business, or to operate a tax preparation business outside of the specified territory. *See id.; Merry Maids v. Kamara,* 33 F.Supp.2d 443, 445 · (D.Md.1998)(enforcing a similar

---

**9.** JTH has asked for damages in the amount of $177,193.09, representing 130% of Lee's 2006 net receipts, claiming that this number represents the "value of the franchise that Lee has wrongfully retained." (Pl.'s Mem. Supp. Mot. Summ. J. 20.) JTH provides no legal basis to support such a speculative award of the value of the territory, nor any proximate causation between JTH's lost profits and the amount requested. *See, e.g., Saks Fifth Avenue, Inc. v. James, Ltd.,* · 272 Va. 177, 630 S.E.2d 304, 311 (2006) (noting that to prove damages, a plaintiff "must show a causal con-

nection between the defendant's wrongful conduct and the damages asserted."). Notably, at the evidentiary hearing, JTH attempted to support its purported calculation of damages by citing *McCart v. H & R Block, Inc.,* 470 N.E.2d 756 (Ind.App.1984). The court in *McCart* addresses the propriety of entering a permanent injunction and the enforceability of a covenant not to compete, *see infra* at 14, and does not provide a legal basis for the court to award the speculative damages that JTH requests for the value of the franchise territories.

non-compete agreement after balancing the harm to the plaintiff's business interests as compared to the harm to the defendant's financial well-being.) Finally, the public interest lies in favor of upholding the contract between JTH and Lee. "[E]nforcing legitimate noncompete obligations serves the public interest in preventing consumer confusion." *Id.* at 446; *see also McCart v. H & R Block, Inc.,* 470 N.E.2d 756, 763 (Ind.App.1984) (upholding a permanent injunction based on similar facts, and noting that inclusion of a valid noncompete agreement in a franchise agreement preserves the value of the property right found in a franchise service mark). A permanent injunction has been granted in several other cases under similar circumstances based on the exact same Franchise Agreements. *See Donofrio,* 2006 WL 2796841, at *5; *JTH Tax, Inc. v. Smith,* No. 2:06cv76, 2006 WL 1982762, at *3 (E.D.Va. June 23, 2006).

### IV. Defendant's Counterclaim

On March 12, 2007, Lee filed a four-count counterclaim against JTH, alleging a violation of the Illinois Franchise Disclosure Act, 815 ILL. COMP. STAT. 705/6, tortious interference with a business expectancy, breach of the duty of good faith and fair dealing, and a violation of IOWA CODE § 537A.10. JTH responded by denying all allegations and asserting that Lee's claims were subject to arbitration in accordance with the terms of the Agreements. On March 20, 2007, JTH filed a motion to stay the counterclaim and to compel arbitration. On June 19, 2007, this court adopted the Magistrate's Report and Recommendation and granted JTH's motion to stay the proceedings and to compel arbitration of Lee's counterclaim. Upon further review, the court now finds that Lee's counterclaim

should be dismissed without prejudice, pending arbitration.[10] *See Roadtechs, Inc. v. MJ Highway Tech.,* 79 F.Supp.2d 637, 640 (E.D.Va.2000)(holding that the decision whether to dismiss or stay an action after referral to arbitration is within the discretion of the district court); *Woolridge v. Securitas Sec. Servs. USA, Inc.,* No. 3:06cv573, 2006 WL 3424469, at *2 (E.D.Va. Nov.21, 2006) (same).

### V. Conclusion

For the reasons stated above, JTH's motion for summary judgment is **GRANTED** as to liability and **DENIED** as to the amount of damages. However, after a hearing on the matter, the court **AWARDS** damages in the amount of $133,957.56, as detailed above. The court **GRANTS** plaintiff's motion for a permanent injunction. Lee's counterclaim is **DISMISSED** without prejudice, pending arbitration. The Clerk shall enter judgment for plaintiff in accordance with this opinion, and shall forward a copy of this Opinion and Final Order and the judgment entered thereon to counsel for plaintiff and to defendant.

Defendant may appeal this Opinion and Final Order within thirty (30) days of the date judgment is entered by filing a written notice of appeal with the Clerk, United States District Court for the Eastern District of Virginia, 600 Granby Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

---

10. It is unnecessary and duplicative of judicial resources to keep this case pending on the court's docket, as the arbitration should dispose of the counterclaim which is the only remaining issue in this litigation.